819 So.2d 664 (2002)
Olen Clay GORBY, Appellant,
v.
STATE of Florida, Appellee.
Olen Clay Gorby, Petitioner,
v.
Michael W. Moore, etc., Respondent.
Nos. SC95153, SC00-405.
Supreme Court of Florida.
April 11, 2002.
Rehearing Denied June 11, 2002.
*670 Gregory C. Smith, Capital Collateral Representative, and Bret B. Strand, Assistant Capital Collateral Counsel, Northern *671 Region, Tallahassee, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Stephen R. White, Assistant Attorney General, Capital Appeals, Tallahassee, FL; and Richard B. Martell, Special Assistant Attorney General, Fort Lauderdale, FL, for Appellee/Respondent.
PER CURIAM.
Olen Clay Gorby appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Gorby also has petitioned this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const. For the following reasons, we affirm the trial court's order denying Gorby's motion for postconviction relief. We also deny Gorby's petition for writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
The facts of this case were presented in Gorby v. State, 630 So.2d 544, 545-46 (Fla. 1993):
Gorby was paroled from a Texas prison on April 11, 1990. [n. 1] Later that month he met Robert Jackson, who offered him a ride to Tennessee. At trial Jackson testified that, after a couple of days in Tennessee, they drove to Panama City, Florida. The two men had a falling out, and Jackson went back to Tennessee. He returned to Panama City on Sunday, May 6, and checked into a homeless shelter. During a church service at the shelter that evening, Gorby came in and thanked everyone for the help they had given him and then left. The victim, who was crippled from polio, occasionally picked up people from the shelter to do odd jobs around his home. Two witnesses testified that they saw Gorby with the victim on May 6. The next day the victim's neighbor saw a note on the door of his house trailer. The note, saying he would return on Tuesday, aroused her suspicions, and, on entering the trailer, she found the victim dead of head injuries. A handwriting expert testified that Gorby, not the victim, wrote the note, and Gorby's fingerprint was found on a jar in the victim's kitchen. Receipts tracked the victim's credit cards through Louisiana and Texas.
[Note 1]. He had been serving a sentence for burglary of a dwelling. Gorby has an extensive criminal history dating back to 1968 with multiple convictions of, among other things, burglary, robbery, armed robbery, and attempted homicide. He committed these crimes in six states under at least a dozen different names.
On May 8, 1990, Gorby arrived at his friend Allan Brown's home in San Antonio, Texas, driving the victim's car. Brown and his wife saw Gorby replace the car's Florida license plate with Louisiana plates. Gorby told them that he had killed someone and stolen the car and some credit cards. Several days later Gorby sold the car to Cleo Callaway. A BOLO [n. 2] had been issued for the car because of its connection with a homicide, and on June 19 the police found the car and arrested Callaway. San Antonio police arrested Gorby several days later, and he was extradited to Florida. Gorby made a statement acknowledging that he knew the victim, but claiming that Jackson killed the victim and stole his car and credit cards.
[Note 2]. Be on the look out.
The state charged Gorby with first-degree murder, grand theft auto, burglary with a battery, and armed robbery. The jury convicted him as charged on the first three counts and of robbery on the fourth. At the penalty *672 phase the jury recommended that Gorby be sentenced to death, which the trial court did.
The jury voted 9-3 to recommend a sentence of death. The trial court found four aggravating factors,[1] and no statutory mitigating factors. The trial court also found several nonstatutory mitigating factors,[2] but also determined that they did not outweigh the aggravating factors and, therefore, a sentence of death was appropriate. In October 1995, Gorby filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In May 1997, he filed an amended 3.850 motion with a total of thirty-two claims.[3] *673 After conducting a Huff hearing,[4] the trial court granted an evidentiary hearing on all or part of seven claims,[5] and summarily denied the remaining claims, finding them to be either procedurally barred, insufficiently pled, or lacking a basis on which relief could be granted. After the evidentiary hearing, the postconviction judge denied relief on all seven of the claims for which evidence was presented.[6]

3.850 APPEAL
Gorby raises five broad claims,[7] with numerous subclaims, in his 3.850 appeal. *674 Several of Gorby's claims are procedurally barred or lack merit, and require little further discussion.[8]
Gorby contends that his trial counsel was ineffective in the penalty phase for failing to properly investigate the existence of mitigation evidence and for failing to present that mitigation evidence to the jury. To establish a claim of ineffective assistance of counsel, two elements must be proven:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford v. State, 727 So.2d 216, 219 (Fla.1998). Moreover, to establish prejudice:
The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Rutherford, 727 So.2d at 220. We determine that all of Gorby's assertions of ineffective assistance based on the failure to investigate and present mitigation evidence are unavailing.
Gorby contends that his trial counsel was ineffective for failing to interview his father, Ernie, and for interviewing his other family members in a group instead of individually. We reject both assertions. Trial counsel conducted a phone interview with Gorby's father and determined, as a reasonable tactical decision, *675 that the father had very little, if any, interest in assisting with his son's case. An attorney's reasoned tactical decision not to present evidence of dubious mitigating value does not constitute ineffective assistance. See Porter v. State, 478 So.2d 33, 35 (Fla.1985). Furthermore, if Gorby's father had testified during the penalty phase, the majority of his testimony would have been cumulative to that of Dr. John Goff, Gorby's confidential mental health expert who testified during the guilt-innocence phase, as well to that of Gorby's other family members who testified during the penalty phase. Gorby also insists that his father's unique insight into Gorby's single visit to a psychiatrist when he was twelve years old would have provided significant mitigation evidence. We disagree. When testifying at the evidentiary hearing on Gorby's 3.850 motion, Dr. Goff stated that the new information provided to him by Gorby's collateral counsel served mainly to confirm his pre-trial diagnosis that Gorby suffered from organic personality syndrome and alcohol dependence. Dr. Goff testified at length concerning Gorby's mental condition during the litigation. There is no reasonable probability that had it been presented to the jury, information regarding Gorby's lone visit to a psychiatrist nearly thirty years before he committed the murder in question would have affected the outcome of the penalty phase.[9]
Gorby also asserts his trial counsel was ineffective for not providing Dr. Goff with evidence of Gorby's childhood drinking. He further argues that his trial counsel was ineffective for not calling Dr. Goff to testify during the penalty phase. The record refutes these assertions. Dr. Goff testified in detail during the guiltinnocence phase concerning the effects of alcohol dependence on Gorby's behavior, the impact of an organic personality syndrome, and the implications from head trauma Gorby suffered while he was a young boy, which occurred in a collision with a moving vehicle. Dr. Goff further stated that these factors could have made Gorby act impulsively, with a "hair trigger." Equally important, during the penalty phase Gorby's trial counsel summarized for the jury Dr. Goff's testimony from the guilt-innocence phase, and argued that it should be considered as evidence of statutory mental health mitigation.[10] Furthermore, the trial judge found as nonstatutory mitigation that Gorby's drinking contributed not only to his having some inability to conform his conduct to the requirements of law but also to his having suffered some level of emotional disturbance. When the above facts are juxtaposed against the four strong aggravators found in Gorby's case we determine, as did the postconviction judge, that there is no reasonable probability of a different outcome during the penalty *676 phase. Therefore, Gorby is not entitled to relief.[11]
Gorby makes numerous miscellaneous contentions regarding his trial counsel's failure to present mitigating evidence. We determine that each is either wholly unsupported by evidence, was actually presented as mitigation evidence, or is related to nonstatutory mitigation found to exist by the trial judge.[12] Therefore, with regard to these contentions, Gorby has failed to meet the prejudice prong of Strickland and its progeny. We further reject Gorby's claims to relief under Brady and Giglio, regarding the issue of his trial counsel's ineffectiveness during the penalty phase, as insufficiently pled or wholly conclusory.
Gorby is entitled to no relief regarding his claims of ineffective assistance of counsel during the guilt-innocence phase (claims 3(a) through (e)).[13] In claim 3(a), Gorby asserts that trial counsel was ineffective for not discovering that State witness Robert Jackson, a Florida prison inmate, had written a letter to the prosecution before he testified at Gorby's trial. In the letter, Jackson stated that he would be an "unwanted witness" if he were made to appear in court wearing any restraints or clothing indicating his status as a prison inmate.[14] He also indicated his desire that he not be temporarily incarcerated, during the time he was to be available to testify, in any facility in Bay County (where Gorby's trial was conducted) due to an unexplained fear for his safety. Gorby asserts *677 that Jackson's testimony was the foundation of the State's case because Jackson had provided the link that Gorby not only was in Panama City on the day of the murder but also that he checked out of a mission there on the date the murder occurred. We disagree. The State had independent evidence which established that Gorby was with the victim on the day of the murder,[15] that Gorby's fingerprint was found in the victim's home, and that Gorby had stolen and used the victim's automobile and credit cards. Thus, even if we were to accept the premise that trial counsel was deficient for not discovering the existence of Jackson's letter, it is nevertheless clear that Gorby's claim of ineffective assistance must fail because there is no indication that trial counsel's failure to uncover the letter prejudiced Gorby to the point that a reasonable probability of a different outcome to his trial exists. See Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052; Rutherford v. State, 727 So.2d at 219-20. For similar reasons, we conclude that no Brady violation occurred because, as the postconviction judge noted in her order denying relief on this claim, Jackson's letter "[did] not evidence that a deal was made" between the State and Jackson for favorable testimony. Therefore, Gorby can establish no prejudice resulting to him from Jackson's letter. See also Mills v. State, 684 So.2d 801, 804 n. 4 (Fla.1996) (noting that "prejudice" prong of Strickland is equivalent to the "prejudice" prong of Brady).
Claim 3(b) warrants little discussion. Gorby asserts that his trial counsel was ineffective for not discovering that State witness Cleo Callaway was psychotic when he identified Gorby in a photographic police lineup and when he testified at Gorby's trial. Callaway testified that he purchased an automobile from Gorby in Texas. Police later determined that Gorby had stolen the automobile from his victim. Gorby makes a wholly conclusory claim concerning Callaway's mental state.[16] Moreover, the State produced other witnesses who testified that Gorby was in possession of the victim's automobile. Gorby has shown no prejudice to support claim 3(b) and we therefore deny relief. We also deny his claim to relief under Brady.
In claim 3(c), Gorby asserts that his trial counsel was ineffective for not challenging the qualifications of State witness Jan Johnson, a blood spatter expert. Gorby claims that because Ms. Johnson trained under blood spatter expert Judith Bunker, against whom allegations of exaggerating her educational qualifications had previously been lodged, trial counsel was ineffective for not challenging Ms. Johnson's supposed lack of qualifications. We have previously determined that the issue of whether Judith Bunker's allegedly exaggerated educational qualifications were presented to a jury would have had little effect on the outcome of a case, given that she had been recognized as a blood spatter expert in numerous other cases. See Correll v. State, 698 So.2d 522, 523-24 (Fla. 1997). An extension of this logic applies here. It was established at trial that Ms. Johnson had also been recognized as a blood spatter expert in a significant number of cases in Florida courts. Moreover, her findings were entirely corroborated by another expert whose qualifications were *678 not disputed. Therefore, we find the claim of ineffective assistance of counsel lacking in merit. The claim for relief under Brady also lacks merit because the belief that Ms. Johnson's findings pointed to Gorby's innocence cannot reasonably be ascribed to the State.[17]
Gorby contends, in claim 3(d), that his trial counsel was ineffective for not properly impeaching the medical examiner, Dr. William Sybers, regarding Sybers' possible bias favoring the State during his testimony. At the time Dr. Sybers testified at Gorby's trial in 1991, Sybers' wife had recently died under suspicious circumstances.[18] Gorby also claims that a Brady violation occurred because the State failed to reveal that Dr. Sybers was a suspect in his wife's death. Finally, he claims that a Giglio violation occurred because the State knowingly presented false testimony by Dr. Sybers. Because Gorby's assertions are wholly conclusory and require improper layers of inference, we disagree with all three points.
Gorby fails to establish that any charges were pending against Dr. Sybers when he testified. He also does not present any instance in which he was prevented from exploring any bias on the part of Dr. Sybers. During the penalty-phase closing argument, Gorby's trial counsel actually used some of Dr. Sybers' testimony in an attempt to counteract the State's evidence regarding the heinous, atrocious, or cruel (HAC) aggravating circumstance. In her order denying relief pursuant to Gorby's 3.850 motion, Judge Costello noted that during postconviction proceedings Gorby presented no evidence that materially contradicted Dr. Sybers' trial testimony.[19] Dr. Sybers' testimony focused on the cause of death and how long the victim may have been conscious after receiving the first blow to the head; none of his testimony specifically indicated that Gorby was the killer. Logic does not dictate that we should countenance, on one hand, the attempt by Gorby's trial counsel to use some of Dr. Sybers' testimony for Gorby's benefit and, on the other hand, also countenance the attempt by Gorby's postconviction counsel to show that Gorby's trial counsel was ineffective in his impeachment of Dr. Sybers. Reasoned trial tactics do not amount to ineffective assistance of counsel. See, e.g., Ferguson v. State, 593 So.2d 508, 511 (Fla.1992).
We also reject Gorby's Brady and Giglio claims asserted in connection with Dr. Sybers' testimony. Gorby fails to meet the prejudice element of Brady; in sum, he asks us to infer, without supporting evidence, that Dr. Sybers "must" have been biased toward the State when he testified. A mere stacking of inferences does not constitute a Brady violation. See Porter v. State, 653 So.2d 374, 379 (Fla. 1995) (determining that mere inferences that a deal was cut between the State and a witness in a petitioner's trial, and that the State failed to disclose the deal to the petitioner's counsel, did not constitute a Brady violation in absence of evidence that *679 the deal was ever consummated). Additionally, Gorby's Giglio claim fails because he has shown neither that Dr. Sybers gave any false testimony nor that the State knew that it had presented any false testimony.
In claim 3(e) Gorby contends that his trial counsel was ineffective for failing to undertake a proper cross-examination of Allen and Marissa Brown. Mr. and Mrs. Brown both of whom are deaf, testified for the State with the assistance of a sign language interpreter. The order denying postconviction relief notes that Gorby's trial counsel "questioned the interpreter at length as to her qualifications and ability to adequately interpret the testimony of the witness[es]." We also note that the trial judge questioned the interpreter before she began interpreting for Mr. and Mrs. Brown, and made a specific finding that the interpreter not only was able to communicate with the witnesses but also was able to translate statements of the witnesses and all parties to the case. Furthermore, during the evidentiary hearing on Gorby's 3.850 motion, the sign language interpretation expert called by Gorby said she could not opine that any substantive error in the sign language interpretation occurred at trial. These facts are dispositive of Gorby's claim and require that no relief be given on this issue.[20]
Gorby's next broad claim is that his right to a full and fair evidentiary hearing was denied (claims 4(a), 4(b), and 4(d)). This claim is entirely unavailing. Gorby first asserts that his right to an evidentiary hearing was denied because the State declined to provide immunity from perjury charges to Jerry Wyche, which Gorby claims would have enabled Wyche to testify at his postconviction evidentiary hearing. Gorby sought to reopen his evidentiary hearing based on evidence that Wyche perjured himself when he testified at Gorby's trial.[21] While Gorby contends that the State's refusal to grant Wyche immunity from perjury charges hindered his ability to develop further claims under Brady or Giglio, he fails to cite any case in which the State was compelled to offer immunity to a witness so that a petitioner could further develop claims pursuant to a 3.850 motion. Moreover, Wyche is not the only person to whom Gorby made inculpatory statements.[22] Therefore, we deny relief.[23]
In claim 4(b), Gorby contends that he was unable to present a credible case during postconviction proceedings because of the underfunding and understaffing of the Office of the Capital Collateral Counsel and the unconstitutionality of Florida Rule of Criminal Procedure 3.851. The record clearly shows that Gorby's counsel was afforded the resources to mount a credible case, including opportunities to investigate pertinent matters in various parts of the country. The assertion that rule 3.851 is *680 unconstitutional "has been repeatedly rejected by this Court." Arbelaez v. State, 775 So.2d 909, 919 (Fla.2000). Therefore, no relief is warranted.
Gorby further asserts that he was denied access to public records regarding Dr. Sybers, the medical examiner who testified during his trial. The postconviction judge denied access because the records were deemed part of an ongoing criminal investigation. Gorby offers no credible reason why the postconviction judge erred in her ruling. We deny relief.[24]
In claim 5 Gorby posits that he did not receive the competent assistance of a mental health expert to which he is entitled under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Ake requires that a defendant be afforded access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83, 105 S.Ct. 1087. Our review of the record convinces us that Gorby received a competent mental health examination. The trial court granted the request by Gorby's trial counsel to have Dr. John Goff, a neuropsychologist, appointed as a confidential mental health expert.[25] Dr. Goff examined Gorby using a battery of standard tests, engaged in pretrial discussions with Gorby's counsel, and testified as a witness for Gorby during the guilt-innocence phase of his trial. During his trial testimony Dr. Goff expressed his belief that Gorby suffered from organic personality syndrome and substance abuse problems, and that there were no indications of mental retardation. Therefore, Dr. Goff's examination itself was competent because it certainly was not "so grossly insufficient [as to] ignore clear indications of either mental retardation or organic brain damage." State v. Sireci, 502 So.2d 1221, 1224 (Fla. 1987).
Gorby also contends that his rights under Ake were violated because Dr. Goff did not testify on his behalf during the penalty phase, nor was he given the proper information to enable him to do so. Several facts militate against a determination that Gorby's Ake rights were violated in this manner. Gorby's trial counsel testified at the evidentiary hearing on the 3.850 motion that the main defense in Gorby's trial was that someone else killed the victim, not Gorby. To the extent that Gorby's counsel decided, as a reasonable trial tactic, not to have Dr. Goff testify during the penalty phase because it might have led to Goff's having to make contradictory assertions during the guilt-innocence and penalty phases, no relief is due under Ake. Trial counsel summarized Dr. Goff's testimony during the guilt-innocence phase in his penalty phase closing argument; therefore, the jury was able to consider the information contained in Dr. Goff's testimony. Furthermore, many of the matters on which Gorby asserts Dr. Goff would have testified during the penalty phase were found by the trial judge to be nonstatutory mitigating factors. Gorby has failed to show how he was prejudiced by not having Dr. Goff testify during the penalty phase in addition to his prior testimony.
Gorby also asserts that the postconviction judge misinterpreted the testimony of mental health experts during the evidentiary hearing. We disagree. After reviewing materials provided to him by *681 Gorby's collateral counsel regarding possible penalty phase mitigation, Dr. Goff testified at the evidentiary hearing on the 3.850 motion that he would have given the same opinion during the penalty phase that he presented during the guilt-innocence phase. While Dr. Goff mentioned at one point during the evidentiary hearing that in his opinion two statutory mitigators[26] had been established because Gorby had been brain damaged "all of his life," he also stated in his testimony during the guilt-innocence phase of Gorby's trial that he could not offer an opinion on Gorby's mental state at the time of the murder because Gorby consistently denied to him that he ever committed the murder. Moreover, the postconviction judge noted in her order denying relief that the State presented expert evidence during the evidentiary hearing that Gorby acted with clear intent, rather than on impulse, when "he thought out and took the time to write a note which was meant to divert anyone from discovering the victim's body." The postconviction judge was well within her discretion to evaluate, the testimony of the State's expert regarding the existence vel non of statutory mitigating factors. See Rose v. State, 617 So.2d 291, 293 (Fla.1993) (stating that a postconviction judge "has broad discretion in determining the applicability of mitigating circumstances and may accept or reject the testimony of an expert witness").[27] Given all of the above, "[w]e find no possibility that the additional evidence presented at the postconviction hearing [regarding the Ake claim] would have affected the outcome of this case." Id. at 295.

PETITION FOR WRIT OF HABEAS CORPUS
A petition for writ of habeas corpus is the proper vehicle for asserting the ineffectiveness of appellate counsel. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In considering the petition for habeas relief on the basis of ineffective assistance of appellate counsel, we must determine:
[W]hether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). Moreover, "[t]he defendant has the burden of alleging a specific, *682 serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Gorby makes several assertions of ineffective assistance of appellate counsel within the eight claims he presents on appeal.[28] For the reasons stated below, we determine each claim of ineffectiveness is without merit. We also conclude that there is no merit in the remaining claims in Gorby's habeas petition.
In claim 1 of his habeas petition, Gorby asserts that his appellate counsel was ineffective for not presenting the unconstitutionality of the general jury qualification procedure employed by the circuit court in Bay County at the time of his trial. In our consideration supra of Gorby's claim in his 3.850 appeal that his trial counsel was ineffective regarding the general jury qualification procedure, we determined that the issue was procedurally barred. The record is clear that Gorby's trial counsel failed to preserve the issue for review. Appellate counsel cannot be deemed ineffective for failing to raise an issue not preserved for review. See Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1996); Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995).
Gorby contends in claim 2 that his appellate counsel was ineffective for not raising, as fundamental error, the issue of whether there was factual support for the finding of the heinous, atrocious, or cruel (HAC) aggravator by the trial judge. Contrary to Gorby's contention, this issue was presented in the direct appeal of his sentence of death. There, we stated that "[the HAC aggravator] pertains to the nature of the killing itself, and the record supports finding it." Gorby, 630 So.2d at 547. Through his habeas petition Gorby impermissibly attempts to again review the issue of the HAC aggravator. See Teffeteller v. Dugger, 734 So.2d 1009, 1025 (Fla.1999).
In claim 3 Gorby presents several arguments that his appellate counsel was ineffective for failing to raise several instances of fundamental error. Fundamental error has been described as error "so prejudicial as to vitiate the entire trial." Chandler v. State, 702 So.2d 186, 191 n. 5 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). We have also stated that the fundamental error doctrine appertains only "where the interests of justice present a compelling demand for its application." Smith v. State, 521 So.2d 106, 108 (Fla.1988).
First, Gorby contends that fundamental error occurred when the prosecutor assigned "points" to some of the aggravating *683 and mitigating factors,[29] and that his appellate counsel was ineffective for not including the issue. The prosecutor stated that his analogy was for demonstrative purposes only. The trial judge correctly instructed the jurors that they should consider all the evidence tending to establish one or more mitigating circumstances, and that they should give that evidence such weight as they determined necessary in deciding what sentence to recommend. Moreover, instead of preserving the issue for appeal by contemporaneously objecting to the prosecutor's "point" system, Gorby's trial counsel chose to dissipate its effect by describing it as a "hypothetical and callous rendition" of how the prosecutor weighed various aggravating and mitigating factors. We determine that the prosecutor's argument did not vitiate the fairness of the trial, especially in light of the trial judge's correct instruction to the jury. Moreover, appellate counsel's failure to include an unpreserved issue for appellate review did not compromise the appellate process to the extent that confidence in the result has been undermined.
Gorby further asserts that fundamental error occurred because his appellate counsel failed to challenge the State's use of surprise witnesses during the guilt-innocence phase. Specifically, Gorby states that during the trial and with very short notice to the defense, the State produced witnesses Dale Skipper and Gwen Beck. He claims it was fundamental error for the trial judge to have denied the defense's request for a continuance which would have allowed more time to prepare for the depositions of Skipper and Beck.[30] Gorby also contends that his appellate counsel was ineffective for not presenting this issue of fundamental error on appeal. We disagree on both points. The decision to grant or deny a continuance is a matter within the sound discretion of the trial judge; the decision should not be disturbed absent an abuse of discretion. See Bouie v. State, 559 So.2d 1113, 1114 (Fla. 1990). No abuse of discretion occurred here. Neither Skipper's nor Beck's testimony was crucial to the State's case.[31] Without it, the State still had overwhelming evidence of Gorby's guilt. Moreover, to be effective, counsel is not required to raise every conceivable issue on appeal. See Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989). Appellate counsel's decision not to include this issue does not approach the margins of ineffectiveness. The result in this case did not depend on Skipper's or Beck's testimony. Therefore, appellate counsel's decision not to include this issue for appellate review does not undermine our confidence in the correctness of the result reached on appeal.
Gorby next contends that his appellate counsel was ineffective for not raising the issue of fundamental error concerning the prosecutor's disparaging *684 remarks toward Gorby's trial counsel and Gorby's theory of innocence.[32] The cases on which Gorby relies for relief[33] are distinguishable because the prosecutor in those cases either expressed a personal belief in the defendant's guilt or made disparaging comments nearly incessantly, or because no relief based on fundamental error was ultimately granted. Given the overall context in which Gorby's trial occurred, including the overwhelming evidence of his guilt presented by the State, we determine that any error which occurred was harmless and that appellate counsel was not ineffective for not raising this issue.
Gorby also emphasizes that his appellate counsel was ineffective for not challenging the prosecutor's improper bolstering of State witnesses Allen Brown and Michael Bennett. When Brown and Bennett were on the stand, the prosecutor stated that he had a "rule" for each State witness and that he required each witness "to tell the truth." Gorby primarily relies on the distinguishable case of Cisneros v. State, 678 So.2d 888 (Fla. 4th DCA 1996). In Cisneros, the prosecutor argued to the jury that the testimony of a police officer, who was the key State witness, should be believed because the police officer would never have violated his sacred oath to tell the truth. The district court remanded for a new trial because the State's case hinged on the police officer's testimony. The same situation does not apply in Gorby's case. The State produced other witnesses here who corroborated the testimony of Brown and Bennett. Therefore, the State's case did not hinge on the testimony of either one of them.[34] We determine that no fundamental error occurred regarding this issue, nor was Gorby's appellate counsel ineffective for not raising it.[35]
Finally, with regard to the intertwined issues of fundamental error and ineffective assistance of appellate counsel, Gorby claims that his appellate counsel was ineffective for not asserting fundamental error regarding certain disparaging remarks made by the prosecutor both during opening statement and the questioning of the State's first witness. Gorby further avers that the prosecutor's remarks amounted to the impermissible introduction of nonstatutory aggravating factors. Gorby first alludes to the prosecutor's remark during opening statement that Gorby showed "no remorse" for killing the victim. The trial judge sustained defense counsel's objection to the remark. Gorby's reliance on Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), is misplaced. Maynard primarily concerned the issue of the "heinous, atrocious, or cruel" aggravating circumstance under Oklahoma's criminal statutory scheme. We do not find Maynard applicable to the prosecutor's "no remorse" remark in Gorby's case.[36] At most, harmless *685 error occurred in Gorby's case which warrants no relief. See Pope v. Wainwright, 496 So.2d at 802-03 (appellate counsel not ineffective for failing to raise as fundamental error the prosecutor's "no remorse" comment to jury, in light of strong evidence of guilt). Appellate counsel's decision not to raise the issue does not constitute ineffectiveness.
Gorby also presents a claim of ineffectiveness based on the failure to attack the prosecutor's remark during opening statement that the witnesses the State planned to call, and with whom Gorby had engaged in previous contact, were not churchgoing members because Gorby only confided in people who were "of the same breed" as himself. In support of this position Gorby relies on Marchina v. State, 702 So.2d 1369 (Fla. 1st DCA 1997), which is factually distinguishable. In Marchina, the defendant was on the witness stand when the prosecutor sought to explore other charges that might have been pending against the defendant, and as to which the district court determined that the prejudice outweighed the probative value. No such situation occurred in Gorby's case, and the trial judge appropriately instructed the jury that the comments of both sides in their opening statements were not to be considered as evidence. Therefore, we deny relief and determine that at most harmless error occurred. Finally, Gorby contends that reversible error had occurred when the State asked one of its witnesses whether Gorby was "the type of individual you want riding around with you." The trial judge properly sustained defense counsel's objection. In light of the overwhelming evidence of Gorby's guilt, we again determine that no fundamental error occurred which should have been presented for review. Moreover, counsel's effectiveness does not require the presentation of every conceivable issue on appeal. See Atkins v. Dugger, 541 So.2d at 1167. Counsel cannot be faulted for declining to raise on appeal an issue that would have failed. See Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994).
Gorby contends in claim 4 that his appellate counsel was ineffective for failing to assert on appeal the issue of the trial judge's refusal to allow individual and sequestered voir dire regarding each venireperson's views on the death penalty. The decision to grant individual and sequestered voir dire is within the trial judge's broad discretion. See Davis v. State, 461 So.2d 67, 69-70 (Fla.1984). No abuse of discretion occurred in Gorby's case. The heart of Gorby's assertion is that venirepersons, who were questioned by the State during voir dire but who never sat on Gorby's jury, unduly influenced with their responses to the State's questions some or all of the jurors who ultimately determined Gorby's guilt and recommended that he be sentenced to death.[37] Our review of the record convinces us that the responses given by the venirepersons were both truthful and dispassionate, and did not pose any threat toward preventing the jurors in Gorby's trial from performing their duties in an objective manner. Gorby's claim is *686 wholly conclusory, amounting to little more than speculation that the jurors in his case "must" have been influenced by the comments of venirepersons. Appellate counsel is not ineffective for declining to raise an issue lacking in merit.
Claim 5 of Gorby's habeas petition states that appellate counsel was ineffective for failing to include the issue of whether Gorby's jury weighed invalid aggravators during the penalty phase. First, Gorby states that the trial court was required to give a limiting instruction to the jury regarding the "under sentence of imprisonment" aggravator, and that his appellate counsel was ineffective for not presenting the issue. Specifically, Gorby avers that the trial judge was required to inform the jury that Gorby was on parole when he murdered the victim. Gorby's trial counsel did not object to the standard instruction given to the jury. Thus, the issue was not preserved for appeal. Appellate counsel is not ineffective for failing to raise an issue not preserved for appeal. See Johnson v. Singletary, 695 So.2d at 266-67. Moreover, Gorby cites no precedent requiring a trial judge to give the limiting instruction he seeks. Therefore, this issue also lacks merit.[38]
Gorby also contends that his appellate counsel was ineffective for not challenging the jury instruction for the "prior violent felony" aggravator. Gorby's trial counsel did not object when the standard jury instruction was given, so appellate counsel was not ineffective for not presenting argument on the issue.[39] Gorby cites no precedent stating that the standard jury instruction is invalid, and we decline to make that determination here.[40] This issue lacks merit.
Gorby's challenges regarding appellate counsel's ineffectiveness on the issue of the "pecuniary gain" instruction also must fail. Trial counsel did not object to the wording of the standard jury instruction; consequently, appellate counsel was not ineffective for not raising the issue. Moreover, appellate counsel's decision not to present this issue does not undermine our confidence in the outcome of the appellate process. Gorby cites no precedent persuading us that the pecuniary gain instruction is infirm.[41]
Gorby's challenges regarding the heinous, atrocious, or cruel (HAC) aggravator fail because they are procedurally barred. On direct appeal, we not only considered the merits of the finding of HAC, we also determined that the jury instruction did not constitute error under Espinosa. See Gorby, 630 So.2d at 548. Finally, we reject Gorby's assertion that cumulative errors *687 occurred in the jury instructions which would justify relief.
Claim 6 of Gorby's habeas petition requires only brief discussion. Gorby contends that his appellate counsel was ineffective for not raising the issue of the trial judge's failure to find and weigh the applicable mitigating circumstances. The sentencing order is replete with instances in which the trial judge considered both statutory and nonstatutory mitigating circumstances, and weighed them against the strong aggravators in Gorby's case. We determine that this claim is entirely without merit and likewise determine that appellate counsel's decision not to generate an issue does not constitute ineffectiveness.
Claims 7 and 8 also require little discussion. In claim 7 Gorby states that the jury instructions given during the penalty phase shifted the burden to him to prove that a life sentence was the appropriate penalty. He also argues that "prosecutorial argument" shifted the burden. Gorby cites no specific language from the jury instructions or from the prosecutors' penalty phase closing argument to support his assertion. Moreover, we have previously stated that the standard jury instructions do not shift the burden in the manner Gorby claims. See Shellito v. State, 701 So.2d 837, 842-43 (Fla.1997). In claim 8 Gorby challenges the constitutionality of Florida's death penalty statute. He makes no assertion of ineffective assistance of counsel; therefore, his claim is procedurally barred because it could have been raised on direct appeal. Moreover, we have previously considered similar constitutional challenges and found them lacking in merit. See, e.g., Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992).

CONCLUSION
After careful consideration of all of Gorby's claims, we determine that he is entitled to no relief. Accordingly, we affirm the denial of Gorby's motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We also deny his petition for writ of habeas corpus.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, and QUINCE, JJ., concur.
LEWIS, J., concurs specially with an opinion, in which SHAW, J., concurs.
ANSTEAD and PARIENTE, JJ., concur in result only.
LEWIS, J., specially concurring.
While I concur in the majority's reasoning in this case, I write to express my serious concerns with regard to the potential for reversible error when general jury qualification procedures similar to those described as occurring in Gorby's trial are employed. These procedures were described as including the dual tasks of ensuring that those persons summoned for jury service were qualified to serve and determining whether any person had circumstances that included the statutory criteria for being excused from service. See §§ 40.01, 40.013, Fla. Stat. (1989). I agree with the majority's determination that Gorby's claim regarding the jury qualification process here is procedurally barred. Nonetheless, Gorby's allegations bring to light a possible problem with a jury qualification system that is rife with the potential for abuse.[42]
*688 Gorby avers that a judge in the circuit court in Bay County excused certain potential jurors from service because they presented facts that were within the statutory criteria to be excused or disqualified from jury service. This process occurred before the pools of venirepersons were formed and assigned to the various courtrooms where trial proceedings were to be conducted, including Gorby's trial. The most troubling aspect of Gorby's argument is that without the presence of Gorby and his counsel, an assistant state attorney participated in the process of excusing these potential jurors by having discussions with and providing recommendations to a judicial officer on each potential juror's request to be excused. Obviously, such a system is open to abuse because the State could, in theory, recommend that potential jurors who might be unlikely to favorably view the State's casefor instance, because of age, race, gender, or socioeconomic statusbe excused from service, while also recommending that those likely to be favorable to the State's case not be excused.[43] Moreover, the mere presence of the assistant state attorney under such circumstances provides the State a subtle opportunity to influence jury panels that is not available to the defense. A defendant and his counsel may never know if the State in a particular case "intercepted" a potential juror or jurors or engaged in efforts either to keep a particular juror in the venire pool or to excuse that person from service entirely. A bedrock principle of our country's jury system is that parties must have equal access to the process which determines those who might participate in rendering a verdict in a particular dispute. If more access to the selection process of potential jurors is afforded to one side of the dispute than to the other, the process is rendered inherently unequal.
Equally troubling is that remonstrations directed to end this process appear to have gone unheeded. Twelve years ago, in Mackey v. State, 548 So.2d 904 (Fla. 1st DCA 1989), the First District Court of Appeal considered whether it was reversible error for the State Attorney for the Fourteenth Judicial Circuit to have made an appearance in a Bay County circuit court before potential jurors, outside the presence of defendant Mackey and his counsel.[44] The State Attorney indicated, in his testimony at a hearing on Mackey's motions for a mistrial and to strike the entire venire assigned to his trial proceeding, that he routinely appeared at juror orientation proceedings to introduce himself and to explain the process of being a juror. He would then explain the general qualifications for being a juror and ask if any potential juror met one or more of the statutory criteria to be excused from service. The State Attorney also mentioned that if any defense counsel were in the courtroom during the juror orientation, he made it a habit of introducing them.[45] The trial court denied Mackey's motions. While the court in Mackey determined that no reversible error occurred, it also indicated its deep concerns over the juror *689 qualification process employed in the Bay County circuit court:
In these days of heightened judicial and public scrutiny at each step in the criminal justice process, such a procedure seems to us to invite challenges such as the one [made in Mackey's case]. We cannot say that, in the future, questions of substance will not arise concerning state attorney qualification of jurors which may dictate a result different than that reached here.
It should always be remembered not only that criminal proceedings must be fair, in fact, they must appear to be fair.... An imagined advantage on one side or the other in a criminal proceeding can be as destructive of the integrity of the process as can a real advantage.
Id. at 905-06.
Despite this clear expression of concern from the First District, there are allegations that the jury qualification procedures employed in Bay County may have remained unchanged for some extended period of time. Gorby's allegations present at least the specter of abuse of the right to a fair and impartial jurya right of such value that the importance cannot be overstated. Though Gorby's claim fails here, the warning must be sounded in no uncertain terms that such abuse, if and when it occurs, cannot be tolerated. Where such fundamental rights are concerned, the appearance of fairness is as important as the underlying fairness itself.
SHAW, J., concurs.
NOTES
[1] These were: that the murder was committed while Gorby was under a sentence of imprisonment; that he had a previous conviction of a violent felony; that the murder was committed for pecuniary gain; and that the murder was especially heinous, atrocious, or cruel (HAC).
[2] These were: that Gorby was under the influence of mental or emotional disturbance (but not extreme disturbance); that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired (but not substantially impaired); that his family members loved him; that he had a poor background and abusive father; that he had a failed marriage; that he had suffered the negative impact of his sisters' being wounded by gunfire while Gorby was a child; and that he was the victim of a car accident and head trauma while a child.
[3] Those claims were: (I) access to pertinent public records in state agencies was denied; (II) access to records and files in possession of the trial judge was denied; (III) Florida Rule of Criminal Procedure 3.851 and the understaffing of the Office of the Capital Collateral Regional Counsel prevented Gorby's postconviction counsel from undertaking a full investigation and presentation of his claims; (IV) Florida Rule of Criminal Procedure P. 3.851 is unconstitutional; (VII) inculpatory statements made by Gorby were wrongfully admitted into evidence because Gorby had not made a knowing waiver of his constitutional rights when he made the statements, and trial counsel rendered ineffective assistance on this issue; (VIII) ineffective assistance of trial counsel regarding the investigation into Gorby's innocence and the failure to impeach certain witnesses at trial or, in the alternative, the presentation by the State of false testimony and its failure to turn over exculpatory information; (IX) the reliability of appellate review of Gorby's case was questionable because of the lack of a reliable transcript of his trial proceedings, and trial counsel was ineffective for not securing a reliable transcript; (X) the jury instruction regarding expert testimony was erroneous; (XI) the trial judge erroneously limited Gorby's right to cross-examine witnesses, and trial counsel rendered ineffective assistance regarding this issue; (XII) ineffective assistance of counsel for not challenging the admissibility of harmful hearsay evidence; (XIII) Gorby's constitutional rights were violated due to the State's presentation of testimony from bloodstain analyst Jan Johnson and the State's improper bolstering of Ms. Johnson's credibility, and trial counsel rendered ineffective assistance on this issue; (XVI) ineffective assistance of counsel during the penalty phase due to counsel's failure to investigate and present mitigating evidence and the State's suppression of material evidence regarding the penalty phase; (XVII) denial of the right to assistance from a competent mental health expert; (XVIII) Florida's death penalty is unconstitutional; (XIX) the pecuniary gain aggravator was improperly found by the trial judge, and the jury instruction on this aggravator was faulty; (XX) evidence of Gorby's prior convictions was improperly introduced in support of the "prior conviction of a violent felony" and "under sentence of imprisonment" aggravators; (XXI) the jury instruction regarding the "heinous, atrocious, or cruel" aggravator was erroneous and did not amount to harmless error; (XXII) the jury instruction regarding the "under sentence of imprisonment" aggravating factor was erroneous; (XXIII) the statute setting forth the aggravating circumstances that are considered in a capital case is unconstitutional; (XXIV) the impermissible introduction by the prosecution during the penalty phase of nonstatutory aggravating factors; (XXV) jury instructions impermissibly diluted the jury's sense of responsibility; (XXVI) Gorby was impermissibly burdened by having to prove that death was not an appropriate penalty; (XXVII) the rule prohibiting Gorby's counsel from interviewing jurors is unconstitutional; (XXVIII) juror misconduct occurred in the guilt and penalty phases of Gorby's trial; (XXIX) systematic exclusion of non-whites from Gorby's jury violated his constitutional rights; (XXX) the general jury qualification procedure employed by the circuit court in which Gorby was tried was unconstitutional; (XXXI) the trial court erred in denying Gorby's request for individual and sequestered voir dire of venirepersons; (XXXII) Florida's death penalty statute is unconstitutional both facially and as applied; (XXXIII) the trial judge failed to consider and weigh the existence of mitigating circumstances; (XXXIV) cumulative errors deprived Gorby of his right to a fair trial; (XXXV) Gorby's right to a speedy trial was violated; and (XXXVI) the trial judge impermissibly considered victim impact evidence. Claims V, VI, XIV, and XV in Gorby's original 3.850 motion were withdrawn in his amended 3.850 motion.
[4] See Huff v. State, 622 So.2d 982 (Fla.1993).
[5] The claims listed in footnote 3 for which an evidentiary hearing was granted are: VII, VIII, IX, XI, XIII, XVI, and XVII. Regarding claims VII, IX, and XI, the evidentiary hearing focused solely on the part of each claim that concerned ineffective assistance of counsel. No hearing was granted regarding the part of claim VIII concerning ineffective assistance of counsel.
[6] The Honorable Don T. Sirmons, Circuit Judge, presided over Gorby's trial. The Honorable Dedee Costello, Circuit Judge, presided over Gorby's postconviction proceedings. Judge Sirmons granted Gorby's motion to disqualify him from the postconviction proceedings.
[7] Those claims are: (1) trial counsel provided ineffective assistance at the penalty phase due to counsel's failure to investigate, and to present, mitigation evidence regarding Gorby's mental health, alcohol abuse, and troubled upbringing; (2) trial counsel provided ineffective assistance at the penalty phase for failing to object to: (a) the application of vague or nonstatutory aggravating factors and vague jury instructions regarding those aggravating factors, and (b) jury instructions which diluted the jury's responsibility or amounted to unconstitutional burden shifting; (3) trial counsel provided ineffective assistance at the guilt-innocence phase due to counsel's failure to: (a) discover that a State witness, inmate Robert Jackson, had written a letter to the prosecution before he testified at Gorby's trial; (b) discover that a State witness, Texas inmate Cleo Callaway, suffered from psychosis; (c) challenge the qualifications of blood spatter expert Jan Johnson; (d) discover that the State was concurrently looking into what role the medical examiner, who testified in Gorby's case, had in the death of the medical examiner's wife; (e) cross-examine effectively two witnesses for the State, Allen and Marissa Brown, who were deaf; (f) object to the prosecutions's improper comments and conduct; (g) object to the general jury qualification procedure employed in the circuit court in which Gorby was tried; (h) object to the jury instruction regarding expert witnesses; and (i) discover that the prosecution was engaged in a pattern of using jailhouse informants designed to violate Gorby's due process rights; (4) that Gorby was denied the right to a full and fair evidentiary hearing because (a) during postconviction proceedings the State refused to grant immunity from prosecution for perjury to inmate Jerry Wyche, who testified against Gorby at his trial; (b) the understaffing of the Office of Capital Collateral Regional Counsel and the operation of Florida Rule of Criminal Procedure 3.851 hindered Gorby's ability to present an effective postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850; (c) Gorby's counsel was unconstitutionally prohibited from interviewing the jurors in Gorby's trial; and (d) public records regarding not only the medical examiner's possible involvement in the death of his wife but also possible juror misconduct during Gorby's trial were withheld by various state agencies; and (5) that Gorby was denied competent assistance from a mental health expert to which he is entitled under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

Gorby also asserts that violations of Brady v. Maryland, 373 U.S. 83[ 83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), or Giglio v. United States, 405 U.S. 150[, 92 S.Ct. 763, 31 L.Ed.2d 104] (1972), or both, occurred regarding claims 3(a) through (d) and claim 3(i). For entitlement to relief under Brady, three elements must be satisfied: (1) the evidence at issue must be favorable to the accused because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, willfully or inadvertently; and (3) prejudice to the accused must have ensued. See Way v. State, 760 So.2d 903, 910 (Fla.2000). For entitlement to relief under Giglio, three elements must be satisfied: (1) false testimony must have been presented; (2) the prosecutor must have known that the testimony presented was false; and (3) the testimony must have been material. See Routly v. State, 590 So.2d 397, 400 (Fla.1991).
[8] The following claims are procedurally barred because they could have been or were raised on direct appeal: 2(a), 2(b), and 4(c). Claims 3(f), 3(g), 3(h), and 3(i) are presented with regard to ineffective assistance of counsel. These claims lack merit because even if counsel's performance was deficient, Gorby has nevertheless failed to show the requisite prejudice under Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, with regard to claim 3(i), we further reject the assertion that a Brady or Giglio violation occurred, because Gorby has failed to show how he was prejudiced. None of the "informants" testified against Gorby.
[9] Nor is there a reasonable probability that the outcome of the penalty phase would have been different if Gorby's trial counsel had interviewed Gorby's family members individually instead of in a group. As the postconviction judge noted in her order denying relief, trial counsel gave his business card to all of the family members so they could contact him individually if they later remembered anything that might be helpful. Moreover, mitigation evidence was presented to the jury during the penalty phase, which included testimony from Gorby's mother and his adult sisters, who testified, among other things, about his troubled upbringing and the significant head trauma he incurred when he was approximately four years old.
[10] Trial counsel stated during the evidentiary hearing on Gorby's 3.850 motion that he made a reasoned decision not to again call Dr. Goff during the penalty phase, feeling that any testimony that Dr. Goff would have given would have been merely repetitive of his testimony during the guilt-innocence phase. This tactical decision does not amount to ineffectiveness. See Porter v. State, 478 So.2d at 35.
[11] Trial counsel also was not ineffective for not presenting evidence of Gorby's possible victimization in the form of childhood sexual abuse. The record reflects no sound evidentiary support for this allegation; indeed, trial counsel testified during postconviction proceedings that Gorby denied being the victim of any sexual abuse. Based on the record before us, we decline to determine that counsel was ineffective for not presenting evidence regarding the possibility of his client's victimization by child abuse when the client himself did not acknowledge such abuse and no other evidence substantially supports such an assertion. See generally Porter v. Singletary, 14 F.3d 554, 559-60 (11th Cir.1994). Furthermore, we agree with the postconviction judge's finding that Gorby's proffered evidence of exposure, while a child, to inappropriate sexual behavior by his mother is inconclusive.

Nor do we find any ineffectiveness in trial counsel's not calling Dr. Clell Warriner to testify during the penalty phase. Gorby's trial counsel testified during postconviction proceedings that Dr. Warriner, after being appointed as Gorby's initial confidential mental health expert, subsequently stated that he would best serve as a non-testifying consultant. Dr. Warriner testified during postconviction proceedings that he could not remember whether he made that statement to Gorby's trial counsel. Regardless of this fact, we determine that if Dr. Warriner had testified during the penalty phase, the outcome would not have been different.
[12] Gorby's contention that he is the victim of a hereditary mental disorder is wholly unsupported. We further note that Gorby proffered no firm evidence from a mental health expert to support his claim of brain damage due to in utero exposure to alcohol. The testimony of Gorby's mother during the penalty phase regarding childhood care given by his alcoholic father obviates the contention that the jury did not hear evidence that Gorby was left in the care of severe alcoholics. The following contentions are related to nonstatutory mitigation found by the trial judge: extreme neglect and abandonment as a child and being raised in extreme poverty; exposure to physical and emotional abuse; and negative effects of substance abuse.
[13] We further reject any relief for these claims under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Gorby has neither shown that any witness testified falsely, nor that the State knew it was presenting false testimony.
[14] Jackson asserted entitlement to these privileges because he was a prison trustee who had only 68 days remaining to serve in his sentence.
[15] Fred Grice, a friend of the victim, testified that he saw Gorby and the victim together on the evening of May 6, 1990.
[16] The postconviction judge additionally found that Callaway understood questions posed to him during depositions and at trial, and that Callaway indicated his ability to answer those questions truthfully.
[17] We further reject the assertion that the State improperly bolstered the credibility of Ms. Johnson by referring to Judith Bunker as "the mother of bloodstain analysis" during its questioning of Ms. Johnson. Any error that occurred in this isolated reference was harmless.
[18] We are aware that many years after he testified at Gorby's trial, Dr. Sybers was indicted for the murder of his wife and was subsequently convicted.
[19] This obviates Gorby's assertion that his trial counsel was ineffective for not challenging Dr. Sybers on his failure to (1) visit the crime scene; (2) use certain techniques for examining the victim's brain; and (3) engage in proper blood spatter analysis.
[20] We further reject Gorby's assertion that the postconviction judge failed to perform an analysis of cumulative Brady errors that may have occurred.
[21] Wyche testified at Gorby's trial that while both he and Gorby were incarcerated at the same prison, Gorby related to him that he had once "beat a dude down with a hammer."
[22] Gorby also stated to Allen and Marissa Brown that he had killed someone.
[23] We also deny relief based on Gorby's assertion that the postconviction judge erred in refusing to admit Wyche's affidavit in lieu of his testimony. Given that Wyche's affidavit was proffered more than seven years after Gorby's trial, we are not convinced that it is surrounded by sufficient indicia of reliability and trustworthiness to determine that the postconviction judge erred in not admitting it. See Lightbourne v. State, 644 So.2d 54, 56-57 (Fla.1994).
[24] We also deny relief on Gorby's wholly unsupported and conclusory claim regarding access to public records concerning juror misconduct.
[25] Dr. Clell Warriner served in this capacity prior to Dr. Goff's appointment. Dr. Warriner subsequently made himself available as a consultant.
[26] These mitigators were: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance," and "The capacity to appreciate the criminality of her or his conduct or to conform her or his conduct to the requirements of law was substantially impaired." See § 921.141(6)(b), (e), Fla. Stat. (2000).
[27] The postconviction judge was also well within her discretion in evaluating the testimony of mental health expert Dr. Barry Crown, who examined Gorby for the first time in 1996 and agreed with Dr. Goff's subsequent conclusion that two statutory mitigators were applicable. We also reject Gorby's assertion that he did not receive a competent pretrial mental health evaluation from Dr. Clell Warriner. Gorby's trial counsel testified during postconviction proceedings that Dr. Warriner indicated that he would best serve as a non-testifying consultant, which precipitated the trial court's subsequent appointment of Dr. Goff as Gorby's confidential mental health expert. Furthermore, we reject Gorby's argument that the postconviction judge did not properly consider Dr. Warriner's testimony during the evidentiary hearing on the 3.850 motion.
[28] Those claims are: (1) ineffective assistance of appellate counsel regarding the unconstitutionality of the general jury qualification procedure employed in the Bay County circuit court in which he was tried; (2) ineffective assistance of appellate counsel regarding the fundamental error of the prosecutor's remarks on the heinous, atrocious, or cruel (HAC) aggravator; (3) ineffective assistance of appellate counsel regarding the fundamental error associated with the improper conduct and argument by the prosecutor, as well as the prosecutor's improper introduction of nonstatutory aggravating factors; (4) ineffective assistance of appellate counsel regarding the trial court's refusal to permit individual and sequestered voir dire of venirepersons; (5) ineffective assistance of appellate counsel regarding the jury's weighing of invalid aggravating factors; (6) ineffective assistance of appellate counsel regarding the trial judge's failure to find and weigh mitigating circumstances; (7) ineffective assistance of counsel regarding the shifting of the burden to Gorby to prove that death was an inappropriate penalty; (8) Florida's death penalty statute is unconstitutional.
[29] For example, during the penalty phase closing argument the prosecutor stated that "thirty points" should be allotted for Gorby's having been on parole less than a month before he killed the victim. The prosecutor also stated that "ten points" should be allotted for the love shown toward Gorby by his mother.
[30] The trial judge allowed the defense to depose Skipper and Beck during a break in the trial.
[31] Skipper testified about some of the victim's personal habits and where he typically kept some of his tools. Beck testified as to whether the victim owned an answering machine. Neither Skipper nor Beck was an eyewitness to the murder, and neither positively identified the murder weapon.
[32] Specifically, Gorby challenges the prosecutor's remarks that: (1) Gorby's trial counsel confused witness Allen Brown with his questions; (2) Dr. John Goff's testimony in support of Gorby was at times "nonsensical"; and (3) the defense "couldn't have it both ways" regarding its alternative theories of Gorby's innocence.
[33] Riley v. State, 560 So.2d 279 (Fla. 3d DCA 1990); Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984); Briggs v. State, 455 So.2d 519 (Fla. 1st DCA 1984).
[34] Moreover, the trial judge properly sustained the objection by Gorby's defense counsel regarding the "tell the truth" statement made to Brown.
[35] In the other case on which Gorby relies, Lewis v. State, 711 So.2d 205 (Fla. 3d DCA 1998), no relief based on fundamental error was granted.
[36] Gorby's concurrent reliance on Miller v. State, 373 So.2d 882 (Fla.1979), is also unavailing. In Miller, we determined that the trial judge impermissibly applied the defendant's very serious mental illness as a nonstatutory aggravator that tipped the balance in favor of a sentence of death. Similar circumstances do not apply in Gorby's case.
[37] Gorby emphasizes that the following statements from some members of the venire pool unduly influenced the members of his jury: (1) statements by venirepersons regarding any familial or marital relationship they had with any member of the State Attorney's office; (2) a statement by an attorney/venireperson of his general desire not to serve on a jury; and (3) statements by venirepersons regarding their familiarity with a law enforcement officer who was scheduled to testify during the trial.
[38] We further reject Gorby's contention that the standard jury instruction violates Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Gorby offers no compelling reasoning regarding the constitutional infirmity of the standard instruction.
[39] To the extent that Gorby also seeks to reargue the merits of the trial judge's finding of the prior violent felony aggravator, that attempt is procedurally barred because the issue was raised on direct appeal. See Francis v. Barton, 581 So.2d 583, 584 (Fla.1991) (issue determined on direct appeal cannot be reconsidered in habeas corpus petition).
[40] Gorby's reliance on United States v. Ragsdale, 438 F.2d 21 (5th Cir.1971) is entirely misplaced. The defendant's conviction in Ragsdale was affirmed and no relief regarding the prior violent felony aggravator was granted.
[41] We also reject Gorby's contention that the pecuniary gain standard instruction violates Espinosa. Furthermore, Gorby is procedurally barred from arguing the merits of the trial court's finding of the pecuniary gain aggravator because the issue could have been raised on direct appeal.
[42] Because Gorby's claim regarding the jury qualification procedure was summarily denied and no evidentiary hearing was granted, we are required to accept his factual allegations as true to the extent they are not refuted by the record. See Occhicone v. State, 768 So.2d 1037, 1041 (Fla.2000). Acceptance of factual allegations, however, does not automatically equate with entitlement to relief.
[43] It is not clear, however, that the State acted in a manner that harmed Gorby's rights. The lack of a proper transcript for this qualification procedure renders Gorby's assertions conclusory.
[44] Gorby was also tried and convicted in the circuit court in Bay County.
[45] Mackey and his defense counsel were in another part of the courthouse at the time juror orientation took place prior to his trial proceeding, and were not aware that it was occurring.