558 So.2d 422 (1990)
Jerry William CORRELL, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
Jerry William Correll, Appellant,
v.
State of Florida, Appellee.
Nos. 75583, 75664.
Supreme Court of Florida.
March 16, 1990.
*423 Larry Helm Spalding, Capital Collateral Representative, and Jerome H. Nickerson, Asst. CCR, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for respondent/appellee.
PER CURIAM.
This is a petition for habeas corpus and an appeal from a summary denial of a motion for postconviction relief in which Correll seeks relief from his conviction for first-degree murder and sentence of death. Correll v. State, 523 So.2d 562 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988). We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
Correll was convicted of murdering four persons. The circumstances of the crimes were set forth in our previous opinion as follows:
On the morning of July 1, 1985, the bodies of the four victims were discovered in Mrs. Hines's home in Orlando. All had been repeatedly stabbed and died from massive hemorrhages; the three older victims had defensive type wounds on their hands. A sheriff's department *424 investigator was called to the crime scene and approximately an hour and a half after his arrival encountered Jerry Correll there. Correll was asked for a statement and subsequently went to the sheriff's department where he gave first an oral and then a tape recorded statement. In his statement, Correll indicated that on the night of the murders he had been drinking and smoking marijuana with a woman, who later drove with him to Kissimmee. While at the sheriff's department, Correll consented to having his fingerprints taken and having pictures of the scratches, cuts and bruises on his hands and forearms taken. The next day, Correll was again interviewed and subsequently arrested. After being advised of and waiving his Miranda rights, Correll gave another statement after his arrest. Several bloody fingerprints and palm prints found at the murder scene were later matched to Correll's. Evidence that he had previously threatened to kill his ex-wife was also admitted. In addition, he could not be ruled out as the person whose bloodstains were found at the scene and whose sperm was found in Susan Correll's vagina.
Id. at 564.
In his petition for habeas corpus, Correll first argues that his appellate counsel was ineffective for failing to argue that his right to confront the witnesses against him was denied when the court limited cross-examination of a state witness. Correll refers to a trial court ruling which precluded his attorney from asking Donna Valentine on cross-examination whether Susan Correll had been smoking marijuana on the night before she was killed. The trial judge apparently believed that this evidence was irrelevant. Clearly, this was not a point upon which appellate counsel could reasonably rely to reverse Correll's conviction. Contrary to Correll's suggestion, the fact that his exwife smoked marijuana would not have supported a theory that she was killed as a result of a "drug deal gone bad."
Correll also claims that appellate counsel was ineffective for failing to argue that the trial court caused an unconstitutional conviction and sentence by permitting him to be shackled during the trial. When trial counsel objected to the shackles, the court was advised that Correll previously had been found in possession of a comb fashioned into a knife while in jail and concluded that he was a security risk. On this record, appellate counsel would have had little chance of persuading this Court that the trial judge abused his discretion in permitting Correll to be shackled. See Stewart v. State, 549 So.2d 171 (Fla. 1989), petition for cert. filed, No. 89-6298 (U.S. Dec. 15, 1989). Moreover, to the extent that it can be determined from this record, it appears that the court caused something to be placed in front of the counsel table in order to hide the shackles from the jury.
Further, Correll argues that his appellate counsel was ineffective for failing to argue that the court erred during the penalty phase in refusing to permit the introduction of a letter he wrote to his sister-in-law, reciting that he had developed a close spiritual relationship with his God. We find it unnecessary to decide whether this hearsay evidence should have been admitted because even if error was committed, it was clearly harmless. Correll's sister-in-law testified that Correll had become involved in Bible studies in jail, and Correll himself explained how he had become reacquainted with God during his incarceration.
Next, Correll argues that appellate counsel should have contended that the prosecutor's jury arguments impermissibly referred to matters of nonstatutory aggravation. Because no objection was raised to the prosecutor's one statement now said to be offending, appellate counsel was not ineffective for failing to argue this point.
Correll further argues that appellate counsel was ineffective for failing to contend that the trial court erred in not finding mitigating circumstances. However, appellate counsel did make this argument in this Court, and we specifically found no *425 error with respect to the lack of mitigating factors. Correll, 523 So.2d at 568.
Finally, Correll contends that his appellate counsel should have argued that the trial court erred in refusing to give a penalty phase instruction that the jury could properly consider mercy during the course of its deliberations. However, the court gave the standard jury instructions with respect to sentencing, including the advice that the jury could consider any other aspect of the defendant's character or record and any other circumstances of the offense. Hence, counsel was not ineffective for failing to argue this point.
We reject as without merit Correll's contention that his constitutional rights were violated because the governor signed a death warrant before his two-year period for filing a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 had expired. Correll's remaining contentions[1] are procedurally barred because they either were raised or should have been raised on direct appeal.
In the appeal from the denial of the motion for postconviction relief, Correll makes two arguments that merit discussion.
First, he contends that an evidentiary hearing was required on his allegations that his lawyer was ineffective at the penalty phase of his trial. Specifically, Correll asserts that counsel knew or should have known that he had a lifetime history of heavy drug and alcohol usage but failed to introduce such evidence at the penalty phase. He also contends that trial counsel should have introduced available evidence of a deprived childhood.
There is no doubt that counsel was aware of Correll's prior drug and alcohol usage. In fact, Correll testified that he had used alcohol and various kinds of drugs often, though not on a regular basis, throughout his adult life. Correll now submits affidavits from friends which recite the frequent use of an assortment of drugs and argues that counsel was ineffective for failing to present these witnesses.
In response, the state points out that there was no evidence of any drug usage or excessive drinking the night of the murders. The state further points out that Correll told Dr. Pollack, the psychiatrist who examined him prior to trial, that he used alcohol several times a week and that he had experimented with various drugs, though not on a regular basis. Dr. Pollack concluded that he was not legally insane, that he did not suffer from brain damage, and that neither of the statutory mental mitigating circumstances was applicable. Thus, the state suggests that it was reasonable for trial counsel not to try to portray Correll as a heavy drug user but rather as a person who was good to his mother and brothers and one who had found religion and who was unlikely to be dangerous in the future.
In view of the fact that Correll continued to insist that he was not guilty of the crimes, we can understand why counsel may not have wanted the jury to believe that he was an alcoholic and a drug addict. However, because there was no evidentiary hearing on this issue, we do not pass on whether counsel provided ineffective assistance. *426 Rather, we conclude that Correll has failed to meet the second prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that but for such ineffectiveness, the outcome probably would have been different.
Assuming that counsel had introduced all of the proffered evidence of drug use and intoxication, we are convinced that neither the jury nor the trial judge would have been persuaded to arrive at a different result.[2] Viewed in light of the heinous nature of these four murders and the abundance of aggravating circumstances, the additional evidence simply would not have made any difference.[3]
Correll's second argument is that he did not receive a professionally competent mental health evaluation. He refers to reports of three mental health practitioners who have recently examined him and who find that he suffers from serious mental defects or brain damage as a result of his excessive use of drugs.
The fact that Correll has now obtained psychiatric opinions which seriously question his mental capacity does not mean that he is entitled to a new penalty hearing. Correll's attorney had specifically alerted Dr. Pollack to Correll's prior drug and alcohol use, and Dr. Pollack explored this area with Correll. Dr. Pollack explicitly concluded that Correll had no brain damage.
Correll's reliance upon State v. Sireci, 502 So.2d 1221 (Fla. 1987), and Mason v. State, 489 So.2d 734 (Fla. 1986), is misplaced. In Mason, the defendant had been treated for mental retardation, had been held in a psychiatric ward, and had been the subject of a Baker Act petition for involuntary commitment. In Sireci, the defendant had suffered organic brain damage as a result of an automobile accident which left him in a coma for two weeks and with right side facial paralysis. See State v. Sireci, 536 So.2d 231 (Fla. 1988). There is no assertion that Correll had ever received prior mental health treatment.[4] We reject Correll's claim that he did not receive an adequate mental health examination.
Thus, the claims contained in Correll's motion for postconviction relief are either without merit[5] or were raised or should have been raised on direct appeal.[6]
*427 We deny the petition for habeas corpus and affirm the order denying postconviction relief. No petition for rehearing will be entertained.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] (1) The sentencing jury did not receive instructions explaining the limiting construction of the prior violent felony aggravating circumstance.

(2) The judge and jury improperly relied upon victim impact evidence.
(3) The sentencing jury did not receive instructions explaining the limiting construction of the "committed during the commission of a felony" aggravating circumstance.
(4) The penalty phase jury instruction shifted the burden to Correll to prove that death was inappropriate, and the judge employed this improper standard in sentencing Correll to death.
(5) The sentencing jury was improperly instructed on the "especially heinous, atrocious, or cruel" aggravating circumstance, and this aggravater was improperly argued and imposed.
(6) The cold, calculated, and premeditated aggravating circumstance was applied to Correll in violation of the eighth and fourteenth amendments of the United States Constitution.
(7) The sentencing jury was misled by instructions and arguments which diluted its sense of responsibility.
(8) The death sentence rested upon an unconstitutional aggravating circumstance because the verdict of guilt could have been based upon felony murder.
[2] The trial judge so stated in his order denying post-conviction relief.
[3] As to Correll's claim that his trial counsel was ineffective for failing to delve deeply enough into his purported family history, the record is sufficient for us to conclude that counsel was not ineffective. Counsel presented the testimony of Correll's mother, his brother, and his brother's wife. Neither the brother nor the sister-in-law had known Correll well as a child (the brother being fifteen years older), but the mother described her son as a "happy-go-lucky" boy who had a normal childhood. When Correll testified, he, too, painted a picture of a normal boyhood and said he was close to and loved his father. Correll now alleges an abusive upbringing, with his deceased father as the cause of his misery. If this account is true, trial counsel cannot be faulted for failing to know it, given the fact that diametrically opposite testimony was given by Correll and his mother.
[4] The record reflects that his use of drugs did not prevent Correll from earning a living as a painter and a builder of fiberglass parts as well as from working at Walt Disney World.
[5] Claim III  ineffective assistance of trial counsel at guilt phase.

Claim VII  ineffective assistance of counsel at penalty phase.
Claim VIII  mental health expert failed to conduct a professionally competent evaluation and further ineffective assistance of counsel.
[6] Claim I  trial counsel rendered ineffective by erroneous court rulings.

Claim II  improper limitation of cross-examination.
Claim IV  unconstitutional shackling of defendant during trial.
Claim V  improper exclusion of evidence.
Claim VI  conflict of interest constituted denial of right to cross-examine witnesses and ineffective assistance of counsel.
Claim IX  jury did not receive instruction limiting the construction of the prior violent felony aggravating circumstance.
Claim X  judge and jury improperly relied on victim impact evidence.
Claim XI  jury did not receive instruction limiting the construction of the "committed during the commission of a felony" aggravating circumstance.
Claim XII  trial court erred in refusing to permit mitigating evidence to be presented except through testimony of the defendant.
Claim XIII  trial resulted in arbitrary and capricious imposition of the death penalty.
Claim XIV (misnumbered as claim XVI)  trial court's erroneous failure to find mitigating circumstances.
Claim XV  denial of penalty phase instruction informing jury of its ability to exercise mercy.
Claim XVI  penalty phase jury instruction shifted burden to defendant to prove that death was inappropriate and sentencing judge employed this improper standard.
Claim XVII  improper jury instruction on especially heinous, atrocious, and cruel aggravating circumstance and this aggravater was improperly argued and imposed.
Claim XVIII  the cold, calculated, and premeditated aggravating circumstance was unconsciously applied to defendant.
Claim XIX  sentencing jury was misled by instructions and arguments which diluted its sense of responsibility. (Ineffective assistance of counsel claim contained therein is without merit.)
Claim XX  death sentence rests upon an unconstitutional automatic aggravating circumstance.
Claim XXI (misnumbered as claim XVI)  application of rule 3.851 in defendant's case violated his constitutional rights.