698 So.2d 522 (1997)
Jerry William CORRELL, Appellant,
v.
STATE of Florida, Appellee.
No. 88474.
Supreme Court of Florida.
April 10, 1997.
Rehearing Denied August 28, 1997.
Todd G. Scher, Chief Assistant CCR, Office of the Capital Collateral Representative, Miami, for Appellant.
*523 Robert A. Butterworth, Attorney General and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
Jerry William Correll appeals an order denying his motion for postconviction relief and his motion to disqualify the trial judge. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In 1986 Correll was tried and convicted of the first-degree murders of his ex-wife, Susan Correll, her sister, Marybeth Jones, their mother, Mary Lou Hines, and the Corrells' five-year-old daughter, Tuesday. The jury recommended the death penalty for each of the murders and the trial court imposed four death sentences. This Court affirmed the convictions and death sentences in Correll v. State, 523 So.2d 562 (Fla.1988). This Court denied Correll's petition for writ of habeas corpus and first motion for postconviction relief in March of 1990. Correll v. Dugger, 558 So.2d 422 (Fla.1990). Correll then filed a petition for federal habeas corpus relief in the United States District Court for the Middle District of Florida. Correll subsequently filed a motion to hold his federal proceeding in abeyance in order to file another postconviction motion at the state level. In February of 1995 the federal district court granted Correll's request and ordered that his file be administratively closed. In March of 1995 Correll filed a rule 3.850 motion to vacate his sentence in the trial court, asserting newly discovered evidence and violations of chapter 119, Florida Statutes (1993). The motion alleged that Correll had recently discovered that Judith Bunker, the State's expert witness on blood splatters, had misrepresented her educational background and experience. The motion also alleged that various agencies had failed to comply with Correll's request for public documents related to whether or not these agencies had actually consulted with Bunker in her capacity as an expert in blood stain analysis.
In March of 1996 a hearing on Correll's postconviction motion was conducted before Judge Stroker who had been the judge who presided at Correll's trial. The trial judge summarily denied relief. Correll then filed a motion to disqualify the trial judge on the grounds that the judge had relied on personal knowledge in denying Correll's claims and that the judge was biased against Correll's counsel. This motion was also denied. Correll now appeals the denial of his rule 3.850 motion and the motion to disqualify.
In order for evidence to qualify as newly discovered, "the asserted facts `must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known them by the use of due diligence.'"Jones v. State, 591 So.2d 911, 916 (Fla.1991) (quoting Hallman v. State, 371 So.2d 482, 485 (Fla.1979)). To obtain relief based on a newly discovered evidence claim, the defendant must establish that "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Jones, 591 So.2d at 915.
In its order denying Correll's motion for postconviction relief the trial court stated:
The gravamen of the allegations contained in CORRELL'S motion is that Ms. Bunker has, subsequent to her testimony in the instant case, exaggerated her credentials, most notably holding herself out to be a high school graduate when she apparently does not, in fact possess a high school diploma. Significantly, the thrust of CORRELL'S complaint appears to be the witness's qualification as an expert, as opposed to the substance, i.e. scientific validity or accuracy, of her testimony.
All of the "newly discovered evidence" contained in the Defendant's motion is purely collateral to Ms. Bunker's qualification as an expert witness by this Court. Ms. Bunker's qualification as an expert at trial was based almost entirely on her experience in the relatively new field of blood spatter analysis, and not on her education. Clearly, whatever education the witness did or did not possess was discoverable at the time, had the appropriate questions been asked. Because no reasonable probability exists that "newly discovered evidence" *524 presented in the Defendant's post-conviction motion would have affected the outcome of the trial, had it been known at the time, no evidentiary hearing was warranted. See Jones v. State, 591 So.2d 911 (Fla.1991).
We agree with the trial court that the evidence proffered by Correll does not qualify as newly discovered evidence because it was discoverable at the time of trial. However, even if the evidence was not discoverable at the time of trial, the discrepancies between the level of education, training, and experience Bunker testified to at trial and the asserted level of education, training, and experience she actually had were not so great as to make any difference in the outcome of the case. Moreover, Bunker's vita, which among other things, falsely set forth that Bunker had a high school diploma, was never seen by the jury. Thus, any misrepresentations contained in the vita are irrelevant to Correll's claim.
The only alleged misrepresentation of any import was Bunker's assertion that she had worked as an assistant and technical specialist for the medical examiner's office from 1970 through 1982, when in reality she was a secretary at the medical examiner's office from 1970 to 1974, an assistant to the medical examiner from 1974 to 1981, and a technical specialist for the last five months of her employment with the medical examiner's office. In view of the fact that it is undisputed that she worked on thousands of cases while in the employ of the medical examiner, even this discrepancy becomes less serious.
However, assuming for the sake of argument that Bunker's testimony did contain serious discrepancies that could not have been discovered during trial, we are convinced that these discrepancies did not have any impact on the outcome of the case in light of the overwhelming evidence presented at trial in support of Correll's guilt.[1] Moreover, Bunker's testimony was not crucial to the State's case and merely corroborated the medical examiner's testimony. Correll's argument that Bunker's testimony greatly affected the outcome of the case because it was the only evidence presented in support of the State's "single-killer" theory is meritless because there was overwhelming evidence of Correll's guilt regardless of whether other perpetrators were involved in the murders.[2]
All of Correll's public records requests went to the issue of whether various agencies had consulted with Bunker as an expert witness. The requests were therefore directly related to his newly discovered evidence claim. Because the trial court determined that Correll's newly discovered evidence claim was without merit, the trial court's summary denial of Correll's related public records claim was proper.
Regarding Correll's motion to disqualify Judge Stroker, we affirm the trial court's denial of the motion because it did not state a legally sufficient basis for disqualification. A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing. Quince v. State, 592 So.2d 669, 670 (Fla.1992). To determine if a motion to disqualify is legally sufficient, this Court looks to see "whether the facts alleged would place a reasonably prudent person in the fear of not receiving a fair and impartial trial." Livingston v. State, 441 So.2d 1083, 1087 (Fla. 1983). Correll's motion asserted that: (1) Judge Stroker relied on his personal knowledge of Bunker when he summarily denied Correll's postconviction motion;[3] and (2) that Judge Stroker demonstrated bias *525 against Correll's counsel when he suggested that the Office of Capital Collateral Representative (CCR) uses chapter 119 as a delaying tactic in death penalty cases. However, a review of the record of the hearing establishes that: (1) Judge Stroker was referring to the newly discovered evidence rather than any personal knowledge about Bunker in making his determination that Bunker would have been accepted as an expert even if he had known at the time of trial that Bunker did not have a high school diploma; and (2) Judge Stroker's statements regarding CCR were not such as would legally require him to disqualify himself. The only other fact Correll has presented in support of his motion to disqualify is that the trial court ruled against him in denying his request for an evidentiary hearing on his public records claim. However, an adverse ruling is not sufficient to establish bias or prejudice. Barwick v. State, 660 So.2d 685, 692 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); Jackson v. State, 599 So.2d 103, 107 (Fla.1992). Moreover, we have already determined that the trial court properly dismissed Correll's public records claim.
We affirm the denial of Correll's motion for postconviction relief and the denial of his motion to disqualify the trial judge.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING and WELLS, JJ., concur.
SHAW, J., concurs in result only with an opinion.
ANSTEAD, J., concurs in result only.
SHAW, Justice, concurring in result only.
The gist of Correll's "blood spatter" argument is that the State's expert, Judith Bunker, misstated her credentials and was unqualified to testify. This claim, in my opinion, misses the mark for two reasons. First, even if Bunker's credentials were in fact diminished,[4] the trial court still would have recognized her as an expert. The court stated in its order denying relief:
All of the "newly-discovered evidence" contained in the Defendant's motion is purely collateral to Ms. Bunker's qualification as an expert witness by this Court. Ms. Bunker's qualification as an expert at trial was based almost entirely on her experience in the relatively new field of blood spatter analysis, and not on her education. Clearly, whatever education the witness did or did not possess was discoverable at the time, had the appropriate questions been asked. Because no reasonable probability exists that the "newly-discovered evidence" presented in the Defendant's post-conviction motion would have affected the outcome at trial, had it been known at that time, no evidentiary hearing in this cause is warranted.
This decision is within the sound discretion of the trial court.[5]See, e.g., Cheshire v. State, 568 So.2d 908, 913 (Fla.1990).
Second, even accepting the alleged discrepancies as established, the record shows conclusively that Correll is entitled no relief in light of the other compelling evidence of guilt.[6]See Fla. R.Crim. P. 3.850(d) ("If the motion, files, and records in the case conclusively show that the prisoner is entitled to no *526 relief, the motion shall be denied without a hearing."). I agree with the majority opinion that the trial court did not err in summarily denying Correll's post-conviction motion.
This situation, in my opinion, exposes a critical point concerning expert testimony. The State in a criminal trial assumes a heavy responsibility in vouching for an expert's credentials, for if the State is duped along with everyone else, the consequences can be dire. In the present case, if Bunker's testimony had played a more decisive role in the guilt phase, the State's failure to verify Bunker's credentials could well have resulted in an entire capital trial being thrown out years after the crime had grown stale.
NOTES
[1] Correll had previously threatened to kill his ex-wife. In addition, several bloody fingerprints and palm prints found at the crime scene were matched to Correll's. Correll also had scratches, cuts, and bruises on his hands and forearms when he was questioned by the sheriff's department on the night of the murder.
[2] Bunker never expressed an opinion with respect to how many persons committed the crimes.
[3] Correll's argument is based on the trial judge's following statement:

With the same background and experience as I now know her to have, she would have been admitted as an expert in the emerging field of blood spatter analysis in 1986.
[4] Correll's main complaint is that Bunker represented that she had worked as an assistant and technical specialist to the medical examiner (ME) from 1970 through 1982, when in fact she had worked as a secretary for the ME for part of that time (from 1970 to 1974) and as an assistant and specialist for the remainder. Although Correll also claims that Bunker misstated her credentials on her curriculum vitae and on her job application, neither her vitae nor her application was ever before the jury or trial court.
[5] Whether the alleged discrepancies could have been discovered earlier is questionable. According to Correll, Bunker lied about her qualifications when questioned by the prosecutor at trial. Had she been questioned further by defense counsel, she might well have continued to lie. In point of fact, Bunker allegedly lied on her curriculum vitae and on her job application to the ME's office, as noted above.
[6] See Correll v. State, 523 So.2d 562 (Fla. 1988). Evidence of guilt in the knife-slaying of Correll's ex-wife, Susan, her sister, their mother, and the Correll's little girl included the following: Correll's bloody fingerprints and palm prints were found at the scene; Correll had previously threatened to kill Susan; bloodstains found at the scene and semen found in Susan's vagina matched Correll's.