PER CURIAM.
Jerry William Correll, a prisoner under sentence of death for whom a warrant has *480 been signed,[1] appeals from the summary-denial of his third and fourth successive motions for postconviction relief, circuit court orders that sustained objections to his public records requests, and the denial of his claim regarding midazolam following an evidentiary hearing on that issue. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons discussed, we affirm.
BACKGROUND
Correll was convicted of the first-degree murders of his ex-wife, Susan Correll; the Corrells’ five-year-old daughter, Tuesday; Susan’s mother, Mary Lou Hines; and Susan’s sister, Marybeth Jones. Correll v. State (Correll I), 523 So.2d 562, 564 (Fla.1988). On direct appeal, this Court described the circumstances of the murders as follows:
On the morning of July 1, 1985, the bodies of the four victims were discovered in Mrs. Hines’s home in Orlando. All had been repeatedly stabbed and died from massive hemorrhages; the three older victims had defensive type wounds on their hands. A sheriffs department investigator was called to the crime scene and approximately an hour and a half after his arrival encountered Jerry Correll there. Correll was asked for a statement and subsequently went to the sheriffs department where he gave first an oral and then a tape recorded statement. In his statement, Correll indicated that on the night of the murders he had been drinking and smoking marijuana with a woman, who later drove with him to Kissimmee. While at the sheriffs department, Correll consented to having his fingerprints taken and having pictures of the scratches, cuts and bruises on his hands and forearms taken. The next day, Correll was again interviewed and subsequently arrested. After being advised of and waiving his Miranda rights, Correll gave another statement after his arrest. Several bloody fingerprints and palm prints found at the murder scene were later matched to Correll’s. Evidence that he had previously threatened to kill his ex-wife was also admitted. In addition, he could not be ruled out as the person whose bloodstains were found at the scene and whose sperm was found in Susan Correll’s vagina.
Id. The jury recommended sentences of death by a vote of nine to three for Susan and ten to two for Tuesday Correll, Mary Lou Hines, and Marybeth Jones. Correll v. Sec’y, Dep’t of Corr. (Correll V), 932 F.Supp.2d 1257, 1263 n. 4 (M.D.Fla.2013). The trial court imposed the death sentence for each murder and found in aggravation:
Coirell had been previously convicted of another capital offense; the murder of Susan Correll was heinous, atrocious and cruel and was committed during a sexual battery; the murder of Marybeth Jones was committed during a robbery and for the purpose of avoiding arrest; the murder of Tuesday Correll was heinous, atrocious and cruel, committed in a cold, calculated and premeditated manner and was for the purpose of avoiding arrest; and the murder of Mary Lou Hines was heinous, atrocious and cruel.
Correll I, 523 So.2d at 564.[2] No mitigating factors were found by the trial court. Id. *481 This Court affirmed Correll’s convictions and sentences. Id. at 568. On October 3, 1988, the United States Supreme Court denied certiorari review. Correll v. Florida, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988).
After the circuit court summarily denied Correll’s initial motion for postconviction relief, he appealed and also filed a petition for writ of habeas corpus, with this Court. Correll v. Dugger (Correll II), 558 So.2d 422, 423 (Fla.1990). This Court affirmed the denial of postconviction relief and denied the habeas petition. Id. at 427. Thereafter, Correll filed his first successive motion for postconviction relief, which presented a claim of newly discovered evidence and alleged public records violations. Correll v. State (Correll III), 698 So.2d 522, 523 (Fla.1997). After the motion was summarily denied, Correll filed a motion to disqualify the presiding judge, which was also denied. Id. On appeal, this Court affirmed the denial of both the successive motion and the motion to disqualify. Id. at 525. In 2004, this Court affirmed the summary denial of a second successive postconviction motion in which Correll challenged ' his death sentences pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Correll v. State (Correll IV), 880 So.2d 1210 (Fla.2004) (table decision).
In 2013, the United States District Court for the Middle District of Florida denied Correll’s third amended petition for writ of habeas corpus. Correll V, 932 F.Supp.2d at 1324.[3] Thereafter, the United States Court of Appeals for the Eleventh Circuit denied Correll a certificate of appealability. Correll v. Sec’y, Dep’t of Corr., No. 13-11786-P (11th Cir. July 25, 2013). On January 27, 2014, the United States Supreme Court denied certiorari review. Correll v. Crews, — U.S. -, 134 S.Ct. 1024, 188 L.Ed.2d 124 (2014).
After Governor Scott signed the warrant in this case on January 16, 2015, Correll filed ¿ third successive motion for postcon-viction relief. The claims presented were: (1) Florida’s death penalty statute is unconstitutional and violates evolving standards of decency; (2) the length of time that Correll has spent on death row constitutes cruel' and unusual punishment; and (3) the failure to reveal information about the execution team members violates both the Florida and the United States Constitutions. Correll did not seek an evidentia-ry hearing. He also filed extensive public records requests with the Florida Department of Corrections (DOC), the Florida Department of Law Enforcement (FDLE), and the Office of the Medical Examiner, District Eight. The DOC agreed to provide certain records, but objected to others. The FDLE and the Office of the Medical Examiner objected to the requests.[4] On January 23, 2015, the circuit court sustained the objections of each of these entities.
On January 26, Correll filed with the circuit court an emergency motion for stay of proceedings and stay of execution based upon the United States Supreme Court’s grant of certiorari review in Warner v. *482 Gross, - U.S. - 135 S.Ct. 1173, 190 L.Ed.2d 929 (2015),[5] to consider the use of midazolam in the lethal injection protocol of Oklahoma, which is nearly identical to that of Florida. On January 28, the circuit court entered orders that summarily denied Correll’s third successive postconviction motion ■ and denied his motion for a stay. Correll appealed the summary denial order to this Court, as well as the orders that sustained the public records objections and denied the motion for a stay. Correll subsequently filed with this Court an emergency petition for stay of proceedings and stay of execution.
On February-4, this-Court relinquished jurisdiction to the circuit court to permit Correll to file any pleadings desired with regard to Florida’s lethal injection protocol and to allow the circuit court to consider and determine any claims filed. Thereafter, Correll filed a fourth successive post-conviction motion in which he presented the following challenges: (1) Florida’s lethal injection protocol is unconstitutional because midazolam cannot reliably produce deep unconsciousness, and there is a substantial, constitutionally unacceptable risk of pain and ..suffering from the administration of the second and third drugs in the protocol when a person is conscious; (2) the holding in Baze v. Rees, 553 U.S. 35, 61, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (plurality opinion), that a stay of execution will not be granted absent the showing of a “demonstrated risk of severe pain” that is “substantial when compared to the. known and available alternatives,” is not applicable to Correll because Florida does not use the protocol considered, in Baze; (3) Cor-rell is not required to. establish the availability of an alternative execution drug formula because Florida’s lethal injection protocol violates the Eighth Amendment even when it is properly administered; and .(4) Florida’s lethal injection protocol is unconstitutional as applied to Correll due to the substantial risk of a paradoxical reaction to midazolam, which increases the risk of Correll being conscious during the administration of the second and third drugs.
With regard to this final challenge, Cor-rell asserted that he has a known history of alcohol abuse. Further, he stated that a psychiatrist has diagnosed him with “chemical dependency, Psychoactive Substance Abuse [Disorder], and Psychoactive Substance-Induced Organic Mental Disorder, as well as ‘global cognitive impairment’ due to organic brain damage.” Cor-rell asserted that there is a significant risk of- a paradoxical reaction in individuals with a history of alcohol abuse or psychiatric disorders. Correll requested an evi-dentiary hearing with regard to this motion and listed two witnesses who were available to testify.
On February 9, the circuit court summarily denied all claims. Correll appealed the denial and filed with this Court a renewed request for stay of proceedings and stay of execution. On February 17, this Court stayed Correll’s éxecution.
On June 29, 2015, the United States Supreme Court upheld the constitutionality of the use of midazolam in executions under Oklahoma’s three-drug.lethal injection protocol. Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015). Specifically, the Supreme Court affirmed the decision of the United States Court of Appeals for the Tenth Circuit, which in turn affirmed the denial of an application for preliminary injunction by a federal district court on the 'basis that the petitioners had failed to demonstrate that *483 the use of midazolam as the first drug in the protocol violates the Eighth Amendment. Id. at 2731. The Court explained that under Baze, individuals who allege a particular execution method violates the Eighth Amendment must demonstrate (1) that the challenged method is “‘sure or very likely to cause serious illness and needless suffering,’ and give rise to ‘sufficiently imminent dangers’ and (2) the availability of “an alternative that is ‘feasible, readily implemented, and in fact significantly reduee[s] a substantial risk of severe pain.’ ” Id. at 2737 (citations omitted) (alterations in original). The'Court concluded that the petitioners had failed to satisfy either requirement. Id. at 2737-38.
The Supreme Court determined the petitioners had not demonstrated that the federal district court committed clear error when it found that the use of midazo-lam' would not result in severe pain and suffering. Id. at 2737-39. The Supreme Court noted that several courts, including this Court, have concluded that midazolam is likely to render an' individual insensate to pain that might result from the administration of subsequent drugs in the lethal injection protocol. Id at 2739-40 (citing Chavez v. Fla. SP Warden, 742 F.3d 1267 (11th Cir.), cert. denied, — U.S. -, 134 S.Ct. 1156, — L.Ed.2d - (2014); Banks v. State, 150 So.3d 797 (Fla.), cert. denied, — U.S. -, 135 S.Ct. 511, 190 L.Ed.2d 386 (2014); Howell v. State, 133 So.3d 511 (Fla.), cert. denied — U.S. -, 134 S.Ct. 1376, 188 L.Ed.2d 372 (2014); Muhammad v. State, 132 So.3d 176 (Fla.2013), cert. denied - U.S. -, 134 S.Ct. 894, 187 L.Ed.2d 700 (2014)). The Court considered it “noteworthy” that one or both of the key experts who testified during the federal district court proceedings were also witnesses in the Chavez, Howell, and Muhammad cases. Glossip, 135 S.Ct. at 2739-40.
Moreover, the Supreme Court also could not conclude that the district court clearly erred when it declined to find that the “ceiling effect” for midazolam, i.e., the dose above which the drug ceases to have any greater effect, would negate the ability of midazolam at a 500-milligram dose to render an inmate insensate to pain caused by administration of the remaining drugs. Id. at 2742-43.[6] Additionally, the Court noted that ‘ although the petitioners’ experts testified that the use of midazolam is inappropriate because it presents a risk of paradoxical reactions, the federal district court found that the frequency of such reactions is speculative, and the risk occurs most frequently in doses much lower than the 500 milligrams used in execution protocols. Id. at 2740 n. 3. The Court further added, “the mere fact that a method of execution might result in' some unintended side effects does not amount to an Eighth Amendment violation.” Id. (citing Baze, 553 U.S. at 47, 128 S.Ct. 1520 (plurality opinion)).
After the Supreme Court issued its decision in Glossip, the State filed a motion to vacate the stay of execution that was entered by this Court on February 17. On July 23, 20Í5, this Court denied the State’s motion to vacate the stay without’ prejudice and relinquished jurisdiction to the circuit court to conduct an evidentiary hearing only with respect to Claim IV of Correll’s fourth successive postconviction motion, which concerned Oorrell’s claim that the administration of midazolam as applied to him would result in a paradoxical reaction in light of his alleged brain damage and history of alcohol and sub *484 stance abuse. Correll v. State, No. SC15-147, Order at 1-2 (Fla. Sup.Ct. Order entered July 23, 2015).
The circuit court held a one-day eviden-tiary hearing on August 19. Correll presented testimony from Richard E. Kiley, an attorney who witnessed the execution of Eddie Wayne Davis; Dr. William Morton, a psychopharmacologist; Dr. David A. Lu-barsky, an anesthesiologist; and Walter Biddle, an inspector for FDLE. The State also presented testimony from Biddle, as well as Dr. Steve C. Yun, an anesthesiologist.
Kiley testified that during the execution of Davis, he observed Davis move his mouth “in a tortured grimace,” and gasp for air, while the sheet that covered his body rose and fell. Dr. Morton opined that someone with Correll’s history is “quite likely” to experience a paradoxical reaction to midazolam. Dr. Morton also explained that given the fact that Correll has several risk factors[7] that individually increase his risk of a paradoxical reaction, these factors together would have a synergistic effect that could theoretically increase the likelihood that he will suffer a paradoxical reaction, possibly up to 100%. Further, he testified that it was possible that Davis suffered a paradoxical reaction, based on the testimony of Kiley. However, he admitted that he had never personally witnessed a paradoxical reaction to midazolam, and no scientific studies existed that demonstrated the synergistic effect of multiple risk factors.
Dr. Lubarsky testified that a person who is sedated with midazolam may appear to pass the consciousness check,[8] but may respond to the greater noxious stimuli caused by air deprivation from the administration of vecuronium bromide or the pain from the administration of potassium chloride if the individual is not fully unconscious. He also opined that it was possible that a paradoxical reaction would not manifest immediately following the administration of midazolam, but could develop several minutes later, after the consciousness check has been performed. Further, Dr. Lubarsky agreed that it was extremely likely that Davis suffered a paradoxical reaction during his execution that was observed by Kiley.
Biddle testified regarding his observations of prior executions as an FDLE inspector. He witnessed the execution of Davis and did not observe the motions reported by Kiley. Finally, the State presented testimony from Dr. Yun, who offered an opinion that an individual who is undergoing a paradoxical reaction would not pass the consciousness check, and such a reaction should be obvious to any witness. However, Dr. Yun admitted during cross-examination that he had not reviewed Correll’s medical or psychological history, or conducted a literature review regarding paradoxical reactions to midazo-lam, prior to developing his opinion.
On August 27, 2015, the circuit court denied Claim IV of Correll’s fourth amended motion for postconviction relief. The court made factual findings that Kiley, Dr. Lubarsky, and Biddle were credible wit *485 nesses. The court also concluded that Dr. Morton was learned and logical, but noted that it is difficult for anyone to accurately predict the exact likelihood that a given individual will suffer a paradoxical reaction. Additionally, the court found Dr. Yun to be competent and intelligent, but indicated that Dr. Yun was not familiar with either CorrelTs history or the scholarly research in this field.
The circuit court ultimately concluded that there was no legal basis to grant Correll relief. Although Dr. Morton and Dr. Lubarsky agreed that Correll is “very likely” to undergo a paradoxical reaction, the court concluded these opinions were rooted in speculation and conjecture, due to the difficulty of predicting such reactions and the lack of scientific evidence demonstrating synergistic effects. The court relied on recent cases such as Davis v. State, 142 So.3d 867 (Fla.2014), and Howell, 133 So.3d 511, in which the defendants raised unsuccessful claims that they would suffer from paradoxical reactions to midazolam. Howell notably presented concerns that he would suffer a paradoxical .reaction due to his various mental health conditions that were similar to those alleged by Correll. See Howell, 133 So.3d at 518.[9] In affirming the order of the postconviction court denying relief, this Court explained that Howell failed to demonstrate that even if he were to suffer a paradoxical reaction, he would undergo “needless suffering” or that he would still pass the noxious stimuli test. See id. at 522. Therefore, the circuit court concluded that Correll failed to meet the high burden that he is virtually certain to be subject to an objectively intolerable risk of harm, in violation of the Eighth Amendment.[10]
This appeal follows.
ANALYSIS

Evolving Standards of Decency

Correll contends that Florida’s death penalty system is not in accord with evolving standards of decency because juries may recommend imposition of the death penalty by a simple majority vote.[11] However, this Court has repeatedly rejected such claims. See Hunter v. State, 40 Fla. L. Weekly S231, S234, 175 So.3d 699, 710, (Fla. Apr. 30, 2015); McLean v. State, 147 So.3d 504, 514 (Fla.2014); Kimbrough v. State, 125 So.3d 752, 753-54 (Fla.), cert. denied, — U.S. -, 134 S.Ct. 632, 187 L.Ed.2d 412 (2013); Mann v. State, 112 So.3d 1158, 1162 (Fla.2013). Accordingly, Correll is not entitled to relief.
Additionally, to the extent this claim can be interpreted as a challenge to the constitutionality of Florida’s death penalty statute pursuant to Ring, it is successive because Correll previously presented a Ring challenge in Correll IV. Further, Ring, which was decided in 2002, does not apply retroactively to convictions and sentences that are final on direct review. See Schriro v. Summerlin, 542 U.S. *486 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (“Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review.”); Chandler v. State, 75 So.3d 267, 268-69 (Fla.2011); Johnson v. State, 904 So.2d 400, 412 (Fla.2005). This Court affirmed Correll’s convictions and sentences in 1988, and the United States Supreme Court denied certiorari review. Therefore, Ring is not applicable to Correll.[12]

Length of Time on Death Row

Correll next contends that the length of time .he has spent on death row, over twenty-nine years, constitutes cruel and unusual punishment. As with the prior claim, this Court has repeatedly rejected such challenges. See, e.g., Pardo v. State, 108 So.3d 558, 569 (Fla.2012) (twenty-four years); Johnston v. State, 27 So.3d 11, 27 (Fla.2010) (almost twenty-five years); Tompkins v. State, 994 So.2d 1072, 1085 (Fla.2008) (twenty-three years); Booker v. State, 969 So.2d 186, 200 (Fla.2007) (almost thirty years). Further, executions of inmates who have been on death row as long as, or longer than, Correll have been permitted. See, e.g., Ferguson v. State, 101 So.3d 362, 366 (Fla.2012) (more than thirty years); Waterhouse v. State, 82 So.3d 84, 87 (Fla.2012) (more than thirty-one years); Valle v. State, 70 So.3d 530, 552 (Fla.2011) (thirty-three years). Correll is not' entitled to relief on this claim.

Identity and Background of Execution Team

Correll next contends that section 945.10, Florida Statutes (2014), which exempts from public records law “[ijnformation which identifies an executioner, or any person prescribing, preparing, compounding, dispensing; or administering a lethal injection,” renders Correll’s death sentences unconstitutional and is contrary to evolving standards of decency because it precludes him .from- obtaining information about the individuals who will be involved in his execution. § 945.10(g), Fla. Stat. (2014). However, this Court has previously rejected constitutional challenges to section 945.10, as well as claims that an inmate facing execution has the right to know the identities of execution team members. See, e.g., McLean, 147 So.3d at 513; Darling v. State, 45 So.3d 444, 447-48 (Fla.2010) (“Darling simply requests that we recede from prior precedent so that he may engage in an in-depth review of his executioners’ qualifications and training. We refuse to do so.”); Henyard v. State, 992 So.2d 120, 130 (Fla.2008) (“We [have] previously found section 945.10 facially constitutional and decline to recede from our decision now.”). We have further explained, “there is a presumption that the members of the executive branch -will properly perform their duties in carrying out an execution.” Lightbourne v. McCollum, 969 So.2d 326, 343 (Fla.2007) (quoting Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000)). Moreover, the recent executions of Johnny Kormondy, Chadwick Banks, Eddie Davis, John Henry, and Robert Hendrix have been carried out with no subsequent allegations of difficulties.
Correll has failed to justify reconsideration of prior rulings that have upheld the constitutionality of section 945.10 and determined that death row inmates do not have a right to know the identities and qualifications of execution team members. Accordingly, we reject this claim.

*487
Lethal Injection Protocol

In his fourth successive motion for post-conviction relief, Correll asserted four claims that challenged the constitutionality of the current execution protocol used in Florida. Claims I, III, and IV asserted facial and as-applied challenges to the use of midazolam, while Claim II asserted that the Baze standard either did" not apply to the current protocol in use in Florida, or alternatively, that Correll has satisfied this standard. Following the decision in 'Glos-sip, which clarified that the standard in Baze applied to any constitutional challenges to a given method of execution and rejected facial and as-applied challenges to midazolam,[13] this Court relinquished jurisdiction to the circuit court to consider only Claim IV, Correll’s' claim that the administration of midazolam as applied to him will be unconstitutional.
This Court has previously addressed similar facial challenges to the use of midazolam. See, e.g., Banks, 150 So.3d at 801; Chavez v. State, 132 So.3d 826, 831 (Fla.), cert. denied, — U.S. —, 134 S.Ct. 1156, — L.Ed.2d — (2014); Muhammad, 132 So.3d at 195. Notably, in Howell, the Court considered facial challenges that (1) midazolam is incapable' of rendering an inmate unconscious before the administration of the other drugs in the execution protocol; (2) midazolam has failed to render prior inmates unconscious in previous executions; and (3) the State performs the consciousness check before midazolam has fully anesthetized the inmate. 133 So.3d 511. After an extensive review of the findings of the trial court— which held that Howell failed to satisfy the burden in' Baze — we affirmed the order of the trial court and rejected Howell’s facial challenges to the use of midazolam. Id. at 519-22.
Moreover, the' United States Supreme Court in Glossip upheld the use of midazo-lam in Oklahoma’s'.three-drug protocol— even referencing several decisions - from this Court — when it noted that “numerous courts have concluded that the use of mi-dazolam as the first drug in a three-drug protocol is likely to render an inmate, insensate to pain that might result. from administration of the paralytic agent and potassium chloride.” Glossip, 135 S.Ct. at 2739-10 (citing Chavez, 742 F.3d 1267; Banks, 150 So.3d 797; Howell, 133 So.3d 511; Muhammad, 132 So.3d 176). The Court explained that its review as to the efficacy of midazolam “is even more deferential where, as here, multiple trial courts have reached the same finding, and multiple appellate courts have affirmed those findings.” Id. (citations omitted). Based on the precedent of the Supreme Court and this Court, we reject Correll’s facial challenges to midazolam.
Regarding Correll’s as-applied challenge, this Court employs a mixed standard of review regarding'evidentiary hearings on such matters: we 'defer to factual conclusions of the circuit court, but review constitutional matters de novo. E.g., Davis, 142 So.3d at 871; Henry v. State, 134 So.3d 938, 946 (Fla.), cert. denied, — U.S. —, 134 S.Ct. 1536, 188 L.Ed.2d 466 (2014). We will affirm factual findings of a circuit court that are supported by competent, substantial evidence. See Davis, 142 So.3d at 873; Henry, 134 So.3d at 949.
The circuit court extensively reviewed the evidence submitted during the eviden-tiary hearing before it concluded that Cor-rell failed to meet the high burden of proof that he will suffer a paradoxical reaction:
While . Dri Morton asserted' the risk of a reaction is higher than 50 percent *488 and -could theoretically approach 100 percent, he acknowledged there is no scientific documentation to support his hypothesis of a “synergistic” effect. Furthermore, while both Dr. Morton and Dr. Lubarsky . opined that Defendant is “very likely” to experience a -paradoxical reaction to midazolam, these opinions appear to be based on speculation and conjecture. Contrary to the arguments presented by Defendant during the evidentiary hearing in the instant case, they do not constitute proof of a . virtual certainty that he faces the sort of ‘objectively intolerable risk of harm’ that qualifies as cruel and unusual.
(Emphasis supplied.)
An independent review of the record supports these findings. During the evi-dentiary hearing, experts for the defense did opine that it is likely that Correll will suffer a paradoxical reaction to midazolam. Dr., Morton and Dr. Lubarsky also testified that scientific literature demonstrates rates of paradoxical reactions in .certain populations ranged from 1% to 60%, and that Correll theoretically faces up to a 100% risk of a paradoxical reaction due to the possible synergistic effects of his various mental health issues, the fast rate of administration of midazolam, and the inherent stress of being constricted on a gurney during an execution. However, as the trial court below, noted, neither Dr. Lubarsky nor Dr. Morton could offer evidence from the scientific literature that documents the occurrence of synergistic effects. Their opinions regarding such synergistic effects could therefore only be based on speculation and conjecture, which is clearly not enough to meet the heavy burden of Baze and Glossip. See Glossip, 135 S.Ct. at 2737; Pardo, 108 So.3d at 564.
Further, the Supreme Court has indicated that it is insufficient for an individual to simply allege that he or she is sure or very likely to suffer a paradoxical reaction. Glossip, 135 S.Ct. at 2740 n. 3 (“[T]he mere, fact that a method of execution might result in some unintended side effects .does not amount to an Eighth Amendment violation. ‘[T]he Constitution does not demand the avoidance of all risk of pain.’ ” (citing Baze, 553 U.S. at 47, 128 S.Ct. 1520 (plurality opinion))). Accordingly, the evidence that Correll offered regarding media reports of brief movements of other inmates after the administration of. midazolam — which was disputed by a witness for the State — does not offer any indication- of the risk that Correll himself will suffer needlessly. In -light of the deference owed by this Court to the findings of the circuit court, we conclude that the trial court’s findings regarding Cor-rell’s as-applied challenge are. supported by competent, substantial evidence.
Correll’s principal argument regarding this claim is not that the circuit court ignored or discredited .otherwise' credible evidence, but that the court misapplied the Baze standard in rejecting his claim. However, we conclude that the trial court simply recognized the exceptionally heavy burden of proof shouldered by a defendant who challenges the constitutionality of a method of execution. As the Supreme Court in Glossip explained:
The controlling opinion in Baze first concluded that prisoners cannot successfully challenge a .method of execution unless they establish that the method presents, a risk that is “ ‘sure or very likely to cause serious illness and needless suffering,’ and give rise to ‘sufficiently imminent dangers.’ ” [Baze, 553 U.S.] at 50, 128 S.Ct. 1520 (quoting Helling v. McKinney, 509 U.S. 25, 33, 34-45 [34], 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). To prevail on such a claim, “there must be a ‘substantial risk of *489 serious harm,’ an ‘objectively intolerable risk of harm’ that prevents prison officials from pleading that they were ‘subjectively blameless for purposes of the Eighth Amendment.’ ” 553 U.S. at 50, 128 S.Ct. 1520 (quoting Farmer v. Brennan, 511 U.S. 825, 846, and n. 9, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
135 S.Ct. at 2737 (emphasis in original). The Supreme Court further suggested that the possibility óf a paradoxical reaction did not satisfy this standard: “Moreover, the mere fact that a method of execution might result in some unintended side effects does not amount to an Eighth Amendment violation. ‘[T]he Constitution does not demand the avoidance of all risk of pain.’ ” Id. at 2740 n. 3 (citing Baze, 553 U.S. at 47, 128 S.Ct. 1520 (plurality opinion)).
This Court has similarly rejected claims that the administration of midazolam to a particular individual will cause paradoxical reactions that will produce unconstitutional suffering. See Davis, 142 So.3d at 873 (“Davis has not met his ‘heavy burden’ to show that the injection of midazolam in the amount prescribed by the lethal injection protocol will not render him unconscious and insensate before he suffers any of the effects of a possible porphyria attack.”); Henry, 134 So.3d at 949 (“[T]he evidence established that even if Henry were to suffer an acute coronary event as a result of an injection of midazolam, he would be unconscious and unable to process the pain associated with a heart attack.”); Howell, 133 So.3d at 522 (“[Howell] failed to establish that even if he reacted to midazolam in an unexpected manner, he would undergo needless suffering.” (emphasis supplied)). Therefore, Correll’s challenges to the constitutionality of the use of midazolam in Florida’s execution protocol fail.
Correll also asserts that Glossip incorrectly requires a prisoner scheduled for execution to prove the existence of an available alternative method of execution. However, this Court is bound by the conformity clause of the Florida Constitution to construe the state prohibition against cruel and unusual punishment consistently with pronouncements by the United States Supreme. Court. See Valle, 70 So.3d at 538-39 (citing Lightbourne, 969 So.2d at 335).
Alternatively, Correll states that he has satisfied this requirement by suggesting that the State use properly compounded pentobarbital, which is used by other states that conduct executions. A plurality of the Supreme Court in Baze explained that a prisoner challenging a particular method of execution must establish the following:
[A] condemned prisoner cannot successfully challenge a State’s method of execution merely by showing a slightly or marginally safer alternative.
[[Image here]]
Instead, the proffered alternatives must effectively- address a “substantial risk of serious harm.” Farmer, [511 U.S.] at 842 [114 S.Ct. 1970]. To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain.
553 U.S. at 51-52, 128 S.Ct. 1520 (plurality opinion). The Court in Glossip confirmed that such challengers must demonstrate both that the challenged method is very likely to result in needless suffering and that there is an alternative that is readily available and significantly reduces the risk of pain. 135 S.Ct. at 2737-38.
As explained above, Correll’s challenge to the use of midazolam fails first because he has failed to show that he is very likely to endure needless suffering upon the administration of midazolam. This Court in *490 Muhammad similarly concluded that a prisoner must first demonstrate the unconstitutionality of the existing protocol , before the State will be required to adopt an alternative. 132 So.3d at 197 (“Florida is not obligated to adopt an alternative method of execution without a determination that Florida’s current three-drug protocol is unconstitutional.”).
Further, Correll has failed to offer evidence regarding the availability of compounded pentobarbital. Correll’s assertion that he has demonstrated the availability of compounded pentobarbital rests on' the following propositions: (1) other states use compounded pentobarbital; (2) the State has a pharmacy that could import compounded pentobarbital; and (3) the State could apply for a sterile compounding license. Although these statements may be correct, they do hot amount to competent, substantial evidence of the drug’s ready availability as a feasible alternative, much less satisfy the heavy burden that Correll must bear in order to successfully challenge the use of midazolam. See Troy v. State, 57 So.3d 828, 840 (Fla.2011) (“Conclusory allegations are not sufficient to establish a legally sufficient claim for post-conviction relief.” (citing Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000))); cf. Howell, 133 So.3d at 521-23 (rejecting Howell’s attempt to satisfy the burden of proof regarding the constitutionality of midazo-lam by demonstrating weaknesses of the State’s testimony). Therefore, Correll’s challenge to the use of midazolam fails.

Public Records Requests

Lastly, Correll challenges the trial court orders that sustained the objections to his public records requests. This Court has explained the standard of review for denials of public records requests and the requirements of Florida Rule of Criminal Procedure 3.852(h) as follows:
This Court has held that' denial of public records requests are reviewed under the abuse of discretion standard. See Dennis v. State, 109 So.3d 680, 698 (Fla.2012); Diaz v. State, 945 So.2d 1136, 1149 (Fla.2006). “Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court,” State v. Coney, 845 So.2d 120, 137 (Fla.2003).(quoting White v. State, 817 So.2d 799, 806 (Fla.2002)). The Court has long acknowledged that the public records procedure under Florida Rule of Criminal. Procedure 3.852 “is not intended to be a procedure authorizing , a fishing expedition for records unrelated to a colorable claim for postconviction relief.” Valle, 70 So.3d at 549 (quoting Moore v. State, 820 So.2d 199, 204 (Fla.2002) (quoting Glock v. Moore, 776 So.2d 243, 253 (Fla.2001))).
.... We have noted that requests for records under rule 3.852(h)(3) may be denied as far exceeding the scope of subsection (h)(3) if they are overbroad, of questionable relevance, and unlikely to lead to discoverable evidence. See Mills v. State, 786 So.2d 547, 552 (Fla.2001); see also Rutherford v. State, 926 So.2d 1100, 1117 (Fla.2006) (affirming denial of records under rule 3.852(h)(3) because no prior' requests were made and because the records are not' related to a colorable claim for postconviction relief).
Muhammad, 132 So.3d at 200-01. The documents that Correll requested from the DOC, the FDLE, and the Office of the Medical Examiner fall into three general categories: (1) records related to the drugs utilized in the lethal injection protocol; (2) records related to the training and experience of individuals involved in recent executions, as well as the execution proto *491 col and the equipment to be used during Correll’s execution;, and (3) records related to recent executions, including autopsy-records, photographs, and protocols.[14]
In Muhammad, the inmate filed “voluminous” public records requests that sought information similar to that requested here. This Court' concluded that the requests were overbroad and burdensome, and also were not related to. a colorable claim:
[I]nformation concerning the source of the drugs has been held not to present a cognizable lethal injection claim. . See Pardo v. State, 108 So.3d 558, 565-66. (Fla.), cert. denied, — U.S. -, 133 S.Ct. 815, 184 L.E.2d 602 (2012); Valle, 70 So.3d at 549.... Further, requests related to actions of lethal injection personnel in past executions do not relate to a colorable claim concerning future executions because there is a presumption that members, of the executive branch will perform their duties properly. See Valle, 70 So.3d at 549. Moreover, as to the request for records of all the executions since that of inmate Schwab, no error has been shown. We held in Valle that the circuit court did not err in denying records of the DOC’s executions of the last five inmates. Id....
Muhammad requested a long list of additional records from the FDLE under 3.852(f) similar to his request to the DOC. The circuit court ruled that the records request to FDLE.was overbroad and burdensome, and generally as to all records requested pertaining to lethal injection, that the requested records would not lead to a colorable claim. For the same reasons set forth , above concerning records requested from the DOC under rule 3.852(i), we find no abuse of discretion.
Id. at 203; see also Banks, 150 So.3d at 802 (rejecting public records requests based upon a general challenge to the lethal injection protocol); Chavez, 132 So.3d at 829-30 (affirming the denial of public records requests that sought information about (1) the acquisition of midazolam and its use in Florida’s lethal injection protocol, and the decision to retain the three-drug protocol; (2) consultations with experts about midazolam before the current lethal injection protocol was issued; (3) the manufacturer and distributor of the drugs used in the lethal injection protocol; ■ and (4) checklists and notes prepared by DOC personnel with regard to the executions of twelve inmates); Walton v. State, 3 So.3d 1000, 1014 (Fla.2009) (“[Production of [records related to lethal injection] is unlikely to lead to a colorable claim for relief because the challenge- to the constitutionality of lethal injection as- currently administered -in Florida has been fully considered and rejected by the Court.”).
Further, in Muhammad, this Court held that the circuit court did not abuse-its discretion when it denied a public records .request for the, autopsy records from inmate William Happ. We stated that “Muhammad has not explained how autopsy photographs and reports concerning Happ could disclose at what point Happ was rendered unconscious or whether he experienced pain by virtue of the alleged inefficacy' of midazolam hydrochloride.” 132 So.3d at 203. Relying on Muhammad, this Court in Chavez affirmed the denial of autopsy records requests for two inmates, Happ and Darius Kimbrough.[15] 132 So.3d *492 at 830. We conclude that Correll’s request for the autopsy records of twenty-one inmates is not only unduly burdensome, but also unlikely to lead to a colorable claim because the records would not establish when the inmates became unconscious, or whether they experienced pain during their executions.[16]
Additionally, the holding of the Supreme Court in Glossip that the use of midazolam in a three-drug lethal injection protocol nearly identical to that of Florida does not violate the Eighth Amendment validates our prior holdings with regard to public records requests related to Florida’s lethal injection protocol and further supports a conclusion that the circuit court did not abuse its discretion when it sustained the objections to the public records sought by Correll. Accordingly, Correll’s public records challenges are without merit.
CONCLUSION
For the reasons expressed above, we affirm the summary denial of Correll’s third and fourth successive motions for postconviction relief, as well as the circuit court orders sustaining the objections to the public records requests. We also hereby, by separate order, lift the stay of execution imposed by this Court on February 17, 2015. No rehearing will be entertained by this Court and the mandate shall issue immediately.
It is so ordered.
LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

. The execution was originally scheduled for February 26, 2015. A new execution date has not yet been scheduled.

, The decision of the federal district court in Correll V provided additional details about the crimes. For example, the court stated that Correll tortured Susan before he ultimately murdered her. 932 F.Supp.2d at 1270. With regard to the murder of Marybeth Jones, the court noted that after stabbing her numerous times, Correll took her car keys and departed *481 in her vehicle. Id. Additionally, the court stated that five-year-old Tuesday’s body evidenced "hostage type” wounds. Id. The decision also provided that "[t]his five year old child was clad only in her nighty and was clutching her cloth doll when she was brutally and repeatedly attacked by her own father.” Id.

. This action was filed in 1990; however, the federal court stayed the proceedings twice pending the resolution of Correll III and Correll IV. 932 F.Supp.2d at 1263.

. The Office of the Attorney General for the State of Florida filed the objection on behalf of the Office of the Medical Examiner.

. This case was restyled after the execution of one of the petitioners, Charles Warner. See Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 2734-37, 192 L.Ed.2d 761 (2015).

. The Court stated that the fact that midazo-lam has a ceiling effect is not dispositive and noted that the testimony before the district court regarding the dosage at which midazo-lam’s ceiling effect occurs was speculative. Id. at 2743.

. These factors included Correll's history of alcohol abuse, impulsivity, aggression, anxiety, and organic brain symptoms. Dr. Morton also testified that the rate at which midazolam is administered during an execution — which is faster than the administration rate in therapeutic doses — is another risk factor for paradoxical reactions.

, Members of the execution team administer this test to ensure that the subject of the execution is fully unconscious before vecuro-nium bromide and potassium chloride are administered. Members yell the prisoner's name, lift the prisoner by the shoulders and shake him or her, flick the subject’s eyelids, and pinch the trapezius muscle.

. Howell also presented Dr. Lubarsky as a witness. Howell, 133 So.3d at 519.

. The court also noted that during closing statements, defense counsel for Correll objected to the requirement established in Glossip that defendants must provide an available alternative to midazolam on the basis that such a requirement offends her ethical obligations to her client. Nonetheless, defense counsel indicated that the State could use properly compounded pentobarbital, instead of mi-dazolam.

.Correll also challenges the fact that Florida law permits a judge to override a jury life recommendation. However, the jury in this case recommended death sentences for all four murders. Correll V, 932 F.Supp.2d at 1263 n. 4. Therefore, an override is not at issue.

. In light of. this conclusion, any stay of Correll’s execution pending the outcome of Hurst v. State, 147 So.3d 435 (Fla.2014), cert. granted, — U.S. -, 135 S.Ct. 1531, 191 L.Ed.2d 558 (2015), should be issued by the Supreme Court.

. See Glossip, 135 S.Ct. at 2737-39.

. Correll also sought the names and background information of his execution team members; however, as previously discussed, that information is confidential and exempt from disclosure under section 945.10, Florida Statutes.

. Chavez also requested the autopsy records for Askari Abdullah Muhammad, but an au *492 topsy was not performed on Muhammad. Chavez, 132 So.3d at 830 n. 3.

. Moreover, a number of these inmates were not even executed under the current protocol.